UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| |
|---|
| Caption in Compliance with D.N.J. LBR 9004-2(c) |

Order Filed on March 31, 2017
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In Re:

 Kenneth G McNeil

Case No.:          15-14218

Adv. No.:

Hearing Date:

Judge:          KAPLAN

## ORDER CONFIRMING CHAPTER 11 PLAN

The relief set forth on the following page is hereby **ORDERED**.

**DATED: March 31, 2017**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Law Offices of Scott E. Kaplan, LLC
12 N. Main Street, P. O. Box 157
Allentown, New Jersey 08501
(609) 259-1112
Attorney for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In Re: | : | **Chapter 11** |
| | : | |
| **KENNETH G. MC NEIL,** | : | **Case No. 15-14218-MBK** |
| | : | |
| Debtor | : | |
| | : | |
| | : | |

---

**ORDER CONFIRMING PLAN**

The Individual Debtor's Combined Plan of Reorganization and Disclosure Statement under Chapter 11 of the Bankruptcy Code filed by Kenneth G. McNeil, on December 28, 2015 as the Chapter 11 Plan, or a summary thereof, having been transmitted to creditors and equity security holders; and

It having been determined after hearing, on notice, that the requirements for confirmation set forth in 11 U.S.C. §1129(a) and/or (b) have been satisfied;

**IT IS ORDERED** that:

The plan filed by Kenneth G. McNeil on December 28, 2015 as modified by Consent Orders Resolving Objections to Confirmation, is confirmed. A copy of the confirmed plan is attached hereto as Exhibit A.

# EXHIBIT

# A

Law Offices of Scott E. Kaplan, LLC.
12 N. Main Street, P. O. Box 157,
Allentown, New Jersey 08501
(609) 259-1112
Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In Re: | : | **CHAPTER 11** |
| | : | |
| **KENNETH G. MC NEIL,** | : | **Case No. 15-14218-MBK** |
| | : | |
| Debtor | : | |

## INDIVIDUAL DEBTOR'S COMBINED PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT

This Combined Plan of Reorganization and Disclosure Statement is presented to you to inform you of the proposed Plan for restructuring the debt of Debtor, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY _____.

YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY_____. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: Scott E. Kaplan, Esquire, Law Offices of Scott E. Kaplan, LLC 12 N. Main Street, P.O. Box 157, Allentown, New Jersey 08501

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2016 AT 10:00 A.M. BEFORE THE HONORABLE MICHAEL B. KAPLAN, U.S.B.J., IN COURTROOM #8 AT THE UNITED STATES BANKRUPTCY COURT, 402 EAST STATE STREET, TRENTON, NEW JERSEY 08608.

Your rights may be affected by this Combined Plan and Disclosure Statement. You should consider discussing this document with an attorney.

Dated: December 28, 2015                    /s/ Scott E. Kaplan_____
                                            Scott E. Kaplan,        Attorney for Debtor

# TABLE OF CONTENTS

Page

SUMMARY OF THE PLAN AND DISTRIBUTION TO CREDITORS..........................4

ARTICLE 1- BACKGROUND OF THE DEBTOR.................................................4
    1.1    Filing of the Debtor's Chapter 11 Case...........................................4
    1.2    Nature of Debtor's Business and/or Source of Income ............................5
    1.3    Past, Current and Projected Income and Expenses ................................6
    1.4    Debtor's Assets...............................................................8
    1.5    Debtor's Liabilities..........................................................9
    1.6    Other Relevant Financial Data ...............................................11
    1.7    Events Leading to the Filing of the Bankruptcy Case.............................11
    1.8    Significant Events During the Bankruptcy Case.................................13
    1.9    Projected Recovery of Avoidable Transfers.....................................15

ARTICLE 2-THE PLAN...................................................................15
    2.1    Unclassified Claims.........................................................15
            A.    Administrative Expenses and Fees..................................16
            B.    Priority Tax Claims...............................................18
    2.2    Classes of Claims and Equity Interests.........................................18
            A.    Classes of Secured Claims.........................................18
            B.    Classes of Priority Unsecured Claims..............................26
            C.    Class(es) of General Unsecured Clams.............................26
            D.    Class(es) of Equity Interest Holders................................ 30
    2.3    Estimated Number and Amount of Claims Objections............................ 31
    2.4    Treatment of Executory Contracts and Unexpired Leases.........................31
    2.5    Means for Implementation of the Plan.........................................33
    2.6    Disbursing Agent........................................................... 34
    2.7    Post-Confirmation Management............................................... 34
    2.8    Tax Consequences of the Plan................................................ 34
    2.9    Risk Factors/Mitigating Factors...............................................34

ARTICLE 3-FEASIBILTY OF PLAN........................................................35
    3.1    Ability to Initially Fund Plan..................................................35
    3.2    Ability to Make Future Payments and Operate Without Further Reorganization.36

ARTICLE 4-LIQUIDATION VALUATION.....................................................37

ARTICLE 5-DISCHARGE..................................................................37
    5.1    Discharge..................................................................37

ARTICLE 6-GENERAL PROVISIONS........................................................38
    6.1    Title to Assets...............................................................38
    6.2    Binding Effect...............................................................38

2

| | | |
|---|---|---|
| 6.3 | Severability | 39 |
| 6.4 | Retention of Jurisdiction by the Bankruptcy Court | 39 |
| 6.5 | Captions | 39 |
| 6.6 | Modification of Plan | 39 |
| 6.7 | Final Decree | 40 |
| 6.8 | Disclaimer | 40 |
| 6.9 | No Levy | 40 |
| 6.10 | Filing of Additional Documents | 40 |
| 6.11 | Privilege | 41 |
| 6.12 | Governing Law | 41 |
| 6.13 | Successors and Assigns | 41 |
| 6.14 | Presentation of Plan Distributions; Undeliverable Distributions | 41 |
| 6.15 | Prepayment | 41 |
| 6.16 | Default | 41 |
| 6.17 | Cancellation of Judgments and/or Other Liens | 42 |

ARTICLE 7-ATTACHMENTS....................................................................42

ARTICLE 8-FREQUENTLY ASKED QUESTIONS..............................................43

ARTICLE 9-DEFINITIONS......................................................................45

## SUMMARY OF THE PLAN AND DISTRIBUTION TO CREDITORS

This is a plan of reorganization whereby the Proponent seeks to accomplish payments under the Plan by positive cash flow from the following sources of income: Debtor's continuing income from his long term disability insurance, his social security disability income and his net rental income from his fifteen residential investment properties; by cramming down Debtor's mortgages on his residential investments properties; and by exchanging a 5% equity interest in Debtor's properties for a $10,000.00 "new value" payment.

Debtor's present Chapter 11 Individual Plan consists of the following:

a.  Cramming down the secured claims of the mortgagees on his investment properties to the respective property's fair market value or agreed upon values and paying same in full on a monthly basis for sixty (60) to one hundred twenty (120) months, as agreed at 4.25% to 5.75% interest, thereby reducing monthly property carrying costs to generate additional cash flow for use to pay creditors. The remaining mortgagee claims will become part of the class of allowed general unsecured claims;

b.  Paying a 3.24% dividend of $40,500.00 to allowed, unsecured creditor class claims pro-rata, commencing within 25 month from the effective date and continuing through the 60th month of the effective date; and

c.  Exchanging 5% equity interest of Debtor for a $10,000.00 "new value" payment from James Evans, an unrelated investor, upon confirmation.

## ARTICLE I-BACKGROUND OF THE DEBTOR

### 1.1.    Filing of the Debtor's Chapter 11 Case

Kenneth G. McNeil, hereinafter referred to as the debtor-in-possession, "McNeil," "Debtor," or "Proponent." filed for Chapter 11 bankruptcy protection on March 11, 2015. Debtor filed the present Order for Relief in consideration of the fact that secured creditor, Wells Fargo Bank, N.A., had obtained a foreclosure judgment and was in the process of executing and levying Debtor's

4

investment property located at 44 S. Hermitage Avenue, Trenton, New Jersey, to foreclose on his property to collect its judgment. Debtor had previously lost a number of properties to foreclosure and faced additional imminent foreclosures of various other properties owned. These factors combined with a confluence of other financial hardships led to the filing for Chapter 11 bankruptcy protection. It must be noted that Debtor purchased several properties after successfully acquiring and selling a number of properties prior to 2007. These properties were purchased as either rental units or units to be rehabbed and rented or resold at a profit. Unfortunately, the Debtor purchased these properties right before the real estate market imploded. The unfortunate timing of Debtors' post-2007 investment real estate holdings led to all of his properties losing significant value and equity which ostensibly frustrated any likelihood of selling any of the properties. This created severe financial strain and drain of the Debtor's finances and cash reserves. Debtor's post-2007 investment properties went into foreclosure and the downward spiral of his finances persisted.    With the advent of catastrophic financial consequences looming due to the foreclosure threat, coupled with the tenuous nature of the pending foreclosures of his properties, Debtor sought the need to seek bankruptcy protection. The filing was made with the clear, good faith intention of remedying the Debtor's financial woes in an orderly manner to enable Debtor to reorganize his debts and pay creditors to the greatest extent possible. The Chapter 11 case is pending in the Bankruptcy Court in Trenton, New Jersey.

**1.2.    Nature of Debtor's Business and/or Source of Income.**

Debtor, a 48 year old, blind, African American man, worked in the banking industry for over 20 years with Wells Fargo Bank after graduating from Rider University in 1999, with a degree in finance but was compelled to take an early retirement in 2001 when he lost his vision. He has been legally blind since that time. During his banking career, he developed, nurtured and cultivated a love for acquiring, selling and/or managing real estate. He seeks to provide adequate housing "a notch above the rest," for the Trenton area in which he grew up as well as for its

5

surrounding communities; doing so has brought him tremendous fulfillment. As a young, African American male with tremendous drive and strong ambition, he has risen above his disability and utilizes it as an impetus for prosperity. He formed and is the sole owner of True Touch Property Management, LLC since 2012, which manages his remaining 15 residential investment properties. In addition to the net income derived from said management company, he receives gross monthly income from social security, long term disability payments from Wells Fargo Bank and monthly insurance disability income.

**1.3.    Past, Current and Projected Income and Expenses.**

A.    Past Income.

In 2008, Debtor earned gross income from real estate and disability of approximately $221,748.00. During that same year, the largest stock market crash in the history of the United States occurred and as a result, Debtor, who had substantial equity investments, sustained a long term loss of $130,000.00 and a short term loss of $88,000. In addition to the stock market crash, which eliminated a large amount of Debtor's equity investments, a collapsing real estate market virtually wiped out the equity of all of his real estate and turned every property's value upside down. In consideration of the above, Debtor no longer had the available cash flow to maintain his real estate obligations. Debtor has worked tirelessly from that time period forward in an effort to retain his properties, with significantly limited cash flow and suffering from long term vacancy rates which made it difficult to maintain property carrying costs including, but not necessarily limited to, mortgage payments. In 2009, Debtor had earned gross income from his long term disability, social security disability, his disability insurance and real estate of $288,445.00. In 2010, Debtor had earned gross income from his long term disability, social security disability, his disability insurance and real estate of approximately $242,654.00. However, Debtor took another stock equity loss of $9,500.00 when he was forced to liquidate a portion of his remaining stock holdings

6

in an effort to raise capital to cover property expenses. His earnings in 2011 from his long term disability, social security disability, his disability insurance and real estate were approximately $203,072.00. His earnings in 2012 from his long term disability, social security disability, his disability insurance and real estate were approximately $200,558.00. In 2013, Debtor's earnings from his long term disability, social security disability, his disability insurance and real estate were approximately $166,060.00; Debtor was forced to incur additional stock equity losses of $32,533.00 raising more funds to cover operating expenses. His earnings in 2014 from his long term disability, social security disability, his disability insurance and real estate were approximately $140,050.00. His gross earnings in 2015 from his long term disability, social security disability, his disability insurance and real estate were approximately $247,200.00.

B.    Current Income (Average since inception of case)

Total Net Monthly Income:                               $ 21,140.00

Total Monthly Expense:                                  $ 12,777.00

C.    Projected Income and Expenses (See attached Plan Financial Projections in Exhibit A.)

Debtor's rental income is expected to rise 3-5% in Plan Years 3 and 5 while expenses are expected to increase 1%-2% throughout the course of his Chapter 11 plan.

D.    Where the Debtor is/was self-employed, or has/had an interest in a business in the last two years, provide the following information:

1.    Business Name: Kenneth G. McNeil and True Touch Property Management, LLC

2.    Nature of Business:  Owning, rehabilitating and managing residential real estate.

3.    Business Type: Debtor is a property owner and True Touch is property manager.

4.    Debtor's percentage of ownership interest: 100%

3    Attach copies of the balance sheets, income statements and/or cash flow statements for the business for the two years preceding the bankruptcy filing. (See Exhibit B included herewith.)

7

1.4.    **Debtor's Assets.**

The Debtor's assets are more particularly described as follows:

| Type | Description | Amount | |
|------|-------------|--------|---|
| **Real Estate** | 1420 Genesee Street, Trenton, NJ 08610 | $46,000.00 | (From Appraisal-see Exhibit C) |
| | 196 Rosemont Ave., Trenton, NJ 08618 | $20,000.00 | (From Appraisal-see Exhibit D) |
| | 219 Woodlawn Ave., Hamilton, NJ 08609 | $37,000.00 | (From Appraisal-see Exhibit E) |
| | 244 Cleveland Ave., Trenton, NJ 08629 | $29,000.00 | (From Appraisal-see Exhibit F) |
| | 251 Woodlawn Ave., Hamilton, NJ 08609 | $40,000.00 | (From Appraisal-see Exhibit G) |
| | 29 S. Olden Ave., Trenton, NJ 08609 | $19,000.00 | (From Appraisal-see Exhibit H) |
| | 324 Mary Street, Hamilton, NJ 08610 | $40,000.00 | (From Appraisal-see Exhibit I) |
| | 329 Cleveland Ave., Trenton, NJ 08629 | $26,000.00 | (From Appraisal-see Exhibit J) |
| | 343 Garfield Ave., Trenton, NJ 08629 | $27,000.00 | (From Appraisal-see Exhibit K) |
| | 44 S. Hermitage Ave., Trenton, NJ 08618 | $24,000.00 | (From Appraisal-see Exhibit L) |
| | 48 S. Olden Ave., Trenton, NJ 08609 | $17,000.00 | (From Appraisal-see Exhibit M) |
| | 5 Cortelyou Road, Jackson, NJ 08527 | $375,000.00 | (From Appraisal-see Exhibit N) |
| | 52 S. Olden Ave., Trenton, NJ 08609 | $20,000.00 | (From Appraisal-see Exhibit O) |
| | 59 Edgemere Ave., Trenton, NJ 08618 | $20,000.00 | (From Appraisal-see Exhibit P) |
| | 631 Norway Ave., Hamilton, NJ 08629 | $36,000.00 | (From Appraisal-see Exhibit Q) |
| **Personal Prop** | Used furniture, furnishings, personal possessions, electronics | $3,050.00 | (From petition schedules) |
| | Bank Accounts | $5,198.78 | (From petition schedules) |
| | IRA | $219,591.75 | (From petition schedules) |
| | True Touch Property Management LLC | $100.00 | (From petition schedules) |
| | Mashpee Investors LLP | $100.00 | (From petition schedules) |

8

| | | | |
|---|---|---|---|
| **TOTAL ASSETS** | | **$984,040.53** | |

## 1.5.  Debtor's Liabilities.

The Debtor's liabilities include his debt to various mortgagees representing obligations secured by mortgages against his real property for $2,673,012.90 in addition to other various debts more particularly described as follows:

| Type | Description | Amount | |
|---|---|---|---|
| **Secured** | | | |
| | Wells Fargo Bank, N.A.c/o Americas Servicing Company | $241,161.17 | Secured by mortgage on 44 S. Hermitage Ave, Trenton, NJ 08618 (Filed Claim #8-1) |
| | Wells Fargo Bank, N.A.c/o WF Business Direct | $110,238.11 | Credit line secured by 2nd mortgage on 44 S. Hermitage Ave., Trenton, NJ 08618 (From petition schedules) |
| | Nationstar Mortgage LLC | $122,482.55 | Secured by mortgage on 52 S. Olden Ave., Trenton, NJ 08609 (Filed Claim #6-1) |
| | US Bank National Assnc/o Specialized Loan Servicing LLC | $67,709.87 | Secured by mortgage on 59 Edgemere Ave., Trenton, NJ 08618 (Filed Claim #7-1) |
| | Deutsche Bank National Trust Co. | $158,000.00 | Secured by mortgage on 324 Mary Street, Hamilton, NJ 08610 (From petition schedules) |
| | US Bank National Assn c/o Nationstar Mortgage LLC | $95,293.63 | Secured by mortgage on 631 Norway Ave., Hamilton, NJ 08629 (Filed Claim #5-1) |
| | US Bank National Assn c/o Nationstar Mortgage LLC | $93,689.61 | Secured by mortgage on 251 Woodlawn Ave., Hamilton, NJ 08609 (Filed Claim #3-1) |
| | Deutsche Bank National Trust Co. c/o Ocwen Loan Servicing LLC | $97,657.73 | Secured by mortgage on 219 Woodlawn Ave., Hamilton, NJ 08609 (Filed Claim #10-1) |
| | Wells Fargo Bank, N.A.c/o WF Business Direct | $131,552.28 | Credit line secured by 2nd mortgage on 219 Woodlawn Ave., Hamilton, NJ 08609 (From petition |

| | | | |
|---|---|---|---|
| | | | schedules) |
| | Ocwen Loan Servicing LLC | $97,306.99 | Secured by mortgage on 196 Rosemont Ave., Trenton, NJ 08618 (From petition schedules) |
| | Deutsche Bank National Trust Co. c/o Ocwen Loan Servicing LLC | $146,408.48 | Secured by mortgage on 244 Cleveland Ave., Trenton, NJ 08629 (Filed Claim #9-1) |
| | Ocwen Loan Servicing LLC | $136,644.25 | Secured by mortgage on 329 Cleveland Ave., Trenton, NJ 08629 (From petition schedules) |
| | Ocwen Loan Servicing LLC | $157,750.50 | Secured by mortgage on 343 Garfield Ave., Trenton, NJ 08629 (From petition schedules) |
| | Seterus Inc. | $117,453.68 | Secured by mortgage on 29 S. Olden Ave., Trenton, NJ 08609 (From petition schedules) |
| | Seterus Inc. | $118,463.56 | Secured by mortgage on 48 S. Olden Ave., Trenton, NJ 08609 (From petition schedules) |
| | Seterus Inc. | $145,157.70 | Secured by mortgage on 1420 Genesee Street, Trenton, NJ 08610 (Filed Claim #11-1) |
| | Wells Fargo Bank, N.A.c/o WF Business Direct | $131,552.28 | Credit line secured by 2nd mortgage on 1420 Genesee Street, Trenton, NJ 08610 (From petition schedules) |
| | Seterus Inc. | $504,491.00 | Secured by mortgage on 5 Cortelyou Road, Jackson, NJ 08527 (From petition schedules) |
| **Priority Taxes Payable** | None | | |
| **Unsecured Non-Priority Claims** | | | |
| | Discover Bank | $9,025.91 | (Filed Claim #1-1) |
| | American InfoSource for Direct TV, LLC | $91.64 | (Filed Claim #4-1) |

10

| | Other liquidated scheduled claims | $310,923.83 | (From petition schedules) |
|---|---|---|---|
| **TOTAL LIABILITIES** | | **$2,993,054.20** | |

## 1.6.    Other Relevant Financial Data.

Since the date the Debtor's petition was filed, Debtor has exercised his best efforts to insure that post-petition obligations and taxes have been paid, all tax returns have been filed and are in process of being filed with most recently due returns on extension, all monthly operating reports have been filed, trustee's administrative fees have been paid and the Operating Guidelines have been properly followed.

This is a plan of reorganization whereby the Proponent seeks to accomplish payments under the Plan by positive cash flow from the following sources of income: Debtor's continuing income from his long term disability insurance, his social security disability income and his net rental income from his fifteen (15) residential investment properties; by cramming down Debtor's mortgages on his residential investments properties thereby generating additional cash flow to pay creditors; paying a 3.24% dividend of $40,500.00 to allowed, unsecured creditor class claims pro-rata, commencing within 25 month from the effective date and continuing through the 60th month of the effective date; and by exchanging a 5% equity interest in Debtor's properties for a $10,000.00 "new value" payment from an unrelated investor upon confirmation.

## 1.7.    Events Leading to the Filing of the Bankruptcy Case.

As indicated in Sections 1.3 and 1.6 above, the significant events that led to the filing of this Chapter 11 case are as follows:

Debtor started working at New Jersey National Bank, Trenton, New Jersey, in the Customer Service department in 1988. His initial gross earnings approximated $20,000.00 per year. Thereafter, his job titles, responsibilities and income progressed. During his employment at the bank, he attended college part-time, majoring in finance. In 1992 while employed by New

Jersey National Bank, he purchased his first property. In 1994, Debtor was promoted to Loan officer and his income increased to around $40,000.00 per year plus commission. In 1998, Debtor obtained his Security License and his salary rose to $60,000.00 per year plus commission. In 1998 through 1999, while working at Wells Fargo Bank, Debtor attended college majoring in finance. After graduating, Debtor was promoted to Financial Specialist with a salary plus commission averaging over $100,000.00 per year. In 2001, Debtor was unable to maintain the Financial Specialist position due to his continued loss of vision: with the deterioration of his vision, he was unable to perform the job duties and had to leave his job. His income plummeted to consist only of Social Security Disability and disability insurance income payments. Immediately thereafter, Debtor developed a passion for real estate and reveled in the ability to provide housing for the community, particularly the inner city of Trenton. Despite being legally blind, with the help of his wife (from whom he is presently divorced) and his father (who passed away in 2013) he began to purchase properties to subsidize his family's income.

In 2005 through 2007 things were going well. He had purchased several homes, rehabbed them and rented them out. With a reasonable portfolio of stock holdings in his brokerage account, Debtor and his wife opened a real estate brokerage office. Over the years, through diligence, hard work and determination, Debtor was able to acquire a number of properties. For a period of time the real estate market flourished. However, in 2007 to 2008 Debtor and his family, like so many others, were adversely impacted by numerous unfortunate events that served to impair Debtor's situation. His real estate crashed, the stock market crashed and his wife's mother who Debtor financially and emotionally supported became very ill in 2007 and later died in 2008. In 2009 to 2013, Debtor's life continued to move in a downward spiral as a result of the aforesaid factors until finally, his wife and he separated and his father was diagnosed with cancer and died in 2013. He was divorced in early 2015.

From 2013 through the date Debtor filed for bankruptcy protection, Debtor believed he had little choice but to permit his mortgagees to foreclose on his properties, thinking that there was nothing he could do to stop them. However, after determining that he was unwilling to sacrifice the considerable time, effort and planning he had invested in his real estate ventures, he resolved that he would endeavor to save and retain his remaining properties by filing for Chapter 11 protection and personally reorganizing. Debtor has resolved not to allow his visual impairment to get in the way of his dream and passion to lead an active, positive life, continuing as a contributing member in service to his community and in an effort to serve as a role model for others with or without similar disabilities.

In view of the aforesaid, on March 11, 2015, Debtor filed the present Order for Relief in consideration of the fact that secured creditor, Wells Fargo Bank, N.A., had obtained a foreclosure judgment and was in the process of executing and levying Debtor's investment property located at 44 S. Hermitage Avenue, Trenton, New Jersey, to foreclose on his property to collect its judgment. Debtor had previously lost a number of properties to foreclosure and faced additional imminent foreclosures of various other properties owned. These factors combined with a confluence of other financial hardships described above, led to the filing for Chapter 11 bankruptcy protection.

## 1.8.    Significant Events During the Bankruptcy.

The following is a chronological list of significant events which have occurred during this case (also refer to the Court's Docket Report):

(A)    March 11, 2015, Debtor voluntarily filed its petition under Chapter 11 as a Debtor.

(B)    March 11, 2015, Application to Employ Professional, Scott E Kaplan, as Attorney, filed. Order for Granting Application to Employ signed April 2, 2015.

(C)    March 11, 2015, Application to Retain Professional, Anthony Nini, CPA, as Accountant, filed. Order for Granting Application to Employ signed April 2, 2015.

13

(D)   March 27, 2015, conducted Initial Debtor Interview with the Office of the U.S. Trustee.

(E)   April 2, 2015, the 341(a) meeting of creditors was held.

(F)   April 27, 2015, a status conference with Judge Michael Kaplan and the U.S. Trustee's Office continued to June 8, 2015, then to August 10, 2015.

(G)   June 16, 2015, Monthly Operating Reports for March, 2015, April, 2015 and May, 2015 filed.

(H)   July 22, 2015, Monthly Operating Report for June, 2015 filed.

(I)   August 16, 2015, Order Requiring Debtor to File Plan of Reorganization and Disclosure Statement entered. Plan and Disclosure Statement to be filed by October 9, 2015, extended to November 2, 2015 then to December 28, 2015.

(J)   September 18, 2015, Monthly Operating Reports for July, 2015 and August, 2015 filed.

(K)   October 1, 2015, Motion for Relief from Stay filed re: 59 Edgemere Avenue, Trenton, N.J. originally returnable October 26, 2015 then adjourned to January 11, 2016.

(L)   October 19, 2015, Opposition to Stay Relief Motion filed.

(M)   October 28, 2015, Monthly Operating Reports for September, 2015 filed.

(N)   December 1, 2015, Motion for Relief from Stay filed re: 1420 Genesee Street, Trenton, N.J. originally returnable December 28, 2015 then adjourned to January 11, 2016.

(O)   December 2, 2015, Consent Order Allowing Mortgagees Proof of Claim re: 1420 Genesee Street, Trenton, N.J. filed.

(P)   Application to Employ Professional, Richard A. Worob, as Appraiser, filed.

(Q)   Quarterly fee payments to the Office of the U.S. Trustee, have been maintained and are up-to-date.

14

(R)    Monthly reporting requirements and quarterly fee payments to the Office of the U.S.

Trustee have been maintained and will be up-to-date as of December 28, 2015.

## 1.9.    Projected Recovery of Avoidable Transfers.

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

## ARTICLE 2-THE PLAN

The Debtor's Plan must describe how his Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.    If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1.    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not

considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

### A. Administrative Expenses and Fees

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the

16

Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | TREATMENT |
|---|---|---|
| Administrative Tax Claim | $0.00 | Paid in full on the Effective Date or according to separate written agreement. |
| Professional fees, as approved by the Bankruptcy Court:<br>1- Scott E. Kaplan, Esq.<br>2- Anthony Nini, CPA | **$12,000.00**<br>**$ 6,000.00** | Paid at the rate of a minimum of $750.00 per month from the Effective Date through the 24th month after same or according to separate written agreement or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court, on the Effective Date. |
| Clerk's Office Fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses- Unpaid post-petition mortgage payments to:<br>1- Wells Fargo Bank,NA (44 Hermitage Ave)<br>2-Nationstar Mortgage (251 Woodlawn Ave)<br>3-Deutsche Bank Nat'l Tr (219 Woodlawn Ave)<br>4-Ocwen Ln Servicg LLC (196 Rosemont Ave)<br>5-Ocwen Ln Servicg LLC (244 Cleveland Ave)<br>6-OcwenLn ServicgLLC (329 Cleveland Ave)<br>7- OcwenLnServicgLLC (343 Garfield Ave)<br>8-Seterus Inc (1420 Genesee Street)<br>9-Seterus Inc (5 Cortelyou Road) | <br>$10,160.92<br><br>$ 5,970.66<br><br>$ 3,660.86<br><br>$ 4,516.84<br><br>$ 5,450.66<br><br>$ 5,191.37<br><br>$ 6,144.20<br><br>$ 7,667.15<br><br>$18.382.00<br><br>——————<br>**$67,144.66** | Paid in full on the Effective Date or according to separate written agreement. |

| Office of the US Trustee | $0.00 | Paid in full on Effective Date.[1] |
|---|---|---|
| **TOTAL** | **$85,144.66** | |

**B.     Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes Described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Description | Amount Owed | Treatment |
|---|---|---|
| **TOTAL PRIORITY CLAIMS** | None | |

**2.2.     Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A.     Classes of Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 1 | Wells Fargo Bank, N.A.c/o Americas Servicing | N | Y | To be crammed down to $36,500.00 |

---

[1] All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

| | | | | |
|---|---|---|---|---|
| | Company Collateral= Debtor's real estate located at 44 S. Hermitage Ave, Trenton, NJ 08618 Value=$36,500.00 Claimed priority int. = 1st Total amount of claim $241,161.17 (Filed Claim #8-1) | | | the value of the collateral serving as security for the obligation. Total of $48,079.20 to be paid within 120 months of Effective Date representing payment in full plus 5.75% interest at the rate of $400.66 per month principal & interest. Lien to remain until total of $48,079.20 paid, then deemed paid in full and cancelled. The balance of Claim #8-1 shall be reclassified as unsecured and treated as an unsecured claim. |
| 2 | Wells Fargo Bank, N.A.c/o WF Business Direct Collateral= Debtor's real estate located at 44 S. Hermitage Ave, Trenton, NJ 08618 Value=$24,000.00 Claimed priority int.= 2nd Total amount of claim $110,238.11 (From petition schedules) | N | N | Second mortgage lien has been cancelled of record & loan deemed satisfied by lender. |
| 3 | Nationstar Mortgage LLC Collateral= Debtor's real estate located at on 52 S. Olden Ave., Trenton, NJ 08609Value=$40,000.00 Claimed priority int. = 1st Total amount of claim $122,482.55 (Filed Claim #6-1) | N | Y | To be crammed down to $40,000.00 the value of the collateral serving as security for the obligation. Total of $44,470.80 to be paid within 60 months of Effective Date representing payment in full plus 4.25% interest at the rate of $741.18 per month principal & interest. Lien to remain until total of $44,470.80 paid, then deemed paid in full and cancelled. The balance of Claim #6-1 |

| | | | | |
|---|---|---|---|---|
| | | | | shall be reclassified as unsecured and treated as an unsecured claim. |
| 4 | US Bank National Assnc/o Specialized Loan Servicing LLC Collateral= Debtor's real estate located at on 59 Edgemere Ave., Trenton, NJ 08618 Value=$20,000.00 Claimed priority int. = 1st Total amount of claim $67,709.87 (Filed Claim #7-1) | N | Y | Property to be surrendered. Creditor made §1111(b) election with reservation; parties may enter into mutually acceptable alternative agreement. |
| 5 | Deutsche Bank National Trust Co. Collateral= Debtor's real estate located at 324 Mary Street, Hamilton, NJ 08610 Value=$46,500.00 Claimed priority int. = 1st Total amount of claim $119,880.00 (From petition schedules) | N | Y | To be crammed down to $46,500.00 the value of the collateral serving as security for the obligation. Total of $67,771.20 to be paid within 120 months of Effective Date representing payment in full plus 5.75% interest at the rate of $564.76 per month principal & interest. Lien to remain until total of $67,771.20 paid, then deemed paid in full and cancelled. The balance of Claim shall be reclassified as unsecured and treated as an unsecured claim. |
| 6 | US Bank National Assn c/o Nationstar Mortgage LLC Collateral= Debtor's real estate located at 631 Norway Ave., Hamilton, NJ 08629 Value=$45,500.00 Claimed priority int. = 1st Total amount of claim $95,293.63 (Filed Claim #5-1) | N | Y | To be crammed down to $45,500.00 the value of the collateral serving as security for the obligation. Total of $55,320.00 to be paid within 120 months of Effective Date representing payment in full plus 4.25% interest at the rate of $461.00 per month principal & |

20

| | | | | |
|---|---|---|---|---|
| | | | | interest. Lien to remain until total of $55,320.00 paid, then deemed paid in full and cancelled. The balance of Claim #5-1 shall be reclassified as unsecured and treated as an unsecured claim. |
| 7 | US Bank National Assn c/o Nationstar Mortgage LLC Collateral= Debtor's real estate located at 251 Woodlawn Ave., Hamilton, NJ 08609 Value=$42,500.00 Claimed priority int. = 1st Total amount of claim $93,689.61 (Filed Claim #3-1 ) | N | Y | To be crammed down to $42,500.00 the value of the collateral serving as security for the obligation. Total of $54,093.60 to be paid within 120 months of Effective Date representing payment in full plus 5.0% interest at the rate of $450.78 per month principal & interest. Lien to remain until total of $54,093.60 paid, then deemed paid in full and cancelled. The balance of Claim #3-1 shall be reclassified as unsecured and treated as an unsecured claim. |
| 8 | Deutsche Bank National Trust Co. c/o Ocwen Loan Servicing LLC Collateral= Debtor's real estate located at 219 Woodlawn Ave., Hamilton, NJ 08609 Value=$38,000.00 Claimed priority int. = 1st Total amount of claim $97,657.73 (Filed Claim #10-1) | N | Y | To be crammed down to $38,000.00 the value of the collateral serving as security for the obligation. Total of $43,550.40 to be paid within 60 months of Effective Date representing payment in full plus 5.5% interest at the rate of $725.84 per month principal & interest. Lien to remain until total of $43,550.40 paid, then deemed paid in full and cancelled. The balance of Claim #10-1 shall be reclassified as |

21

| | | | | |
|---|---|---|---|---|
| | | | | unsecured and treated as an unsecured claim. |
| 9 | Wells Fargo Bank, N.A.c/o WF Business Direct Collateral= Debtor's real estate located at 219 Woodlawn Ave., Hamilton, NJ 08609 Value=$37,000.00 Claimed priority int. = 2nd Total amount of claim $131,552.28 (From petition schedules) | N | N | Second mortgage lien has been cancelled of record & loan deemed satisfied by lender. |
| 10 | Ocwen Loan Servicing LLC Collateral= Debtor's real estate located at 196 Rosemont Ave., Trenton, NJ 08618 Value=$15,000.00 Claimed priority int. = 1st Total amount of claim $97,306.99 (From petition schedules) | N | Y | To be crammed down to $15,000.00 the value of the collateral serving as security for the obligation. Total of $16,680.00 to be paid within 60 months of Effective Date representing payment in full plus 4.25% interest at the rate of $278.00 per month principal & interest. Lien to remain until total of $16,680.00 paid, then deemed paid in full and cancelled. The balance of Claim shall be reclassified as unsecured and treated as an unsecured claim. |
| 11 | Deutsche Bank National Trust Co. c/o Ocwen Loan Servicing LLC Collateral= Debtor's real estate located at 244 Cleveland Ave., Trenton, NJ 08629 Value=$42,500.00 Claimed priority int. = 1st Total amount of claim $146,408.48 (Filed Claim #9-1) | N | Y | To be crammed down to $42,500.00 the value of the collateral serving as security for the obligation. Total of $55,982.40 to be paid within 120 months of Effective Date representing payment in full plus 5.75% interest at the rate of $466.52 per month principal & |

| | | | | |
|---|---|---|---|---|
| | | | | interest. Lien to remain until total of $55,982.40 paid, then deemed paid in full and cancelled. The balance of Claim #9-1 shall be reclassified as unsecured and treated as an unsecured claim. |
| 12 | Ocwen Loan Servicing LLC Collateral= Debtor's real estate located at 329 Cleveland Ave., Trenton, NJ 08629 Value=$32,000.00 Claimed priority int. = 1st Total amount of claim $136,644.25 (From petition schedules) | N | Y | To be crammed down to $32,000.00 the value of the collateral serving as security for the obligation. Total of $42,151.20 to be paid within 120 months of Effective Date representing payment in full plus 5.75% interest at the rate of $351.26 per month principal & interest. Lien to remain until total of $42,151.20 paid, then deemed paid in full and cancelled. The balance of Claim shall be reclassified as unsecured and treated as an unsecured claim. |
| 13 | Ocwen Loan Servicing LLC Collateral= Debtor's real estate located at 343 Garfield Ave., Trenton, NJ 08629 Value=$46,500.00 Claimed priority int. = 1st Total amount of claim $157,750.50 (From petition schedules) | N | Y | To be crammed down to $46,500.00 the value of the collateral serving as security for the obligation. Total of $61,251.60 to be paid within 120 months of Effective Date representing payment in full plus 5.75% interest at the rate of $510.43 per month principal & interest. Lien to remain until total of $61,251.60 paid, then deemed paid in full and cancelled. The balance of Claim shall be reclassified as unsecured |

23

| | | | | |
|---|---|---|---|---|
| | | | | and treated as an unsecured claim. |
| 14 | Seterus Inc. Collateral= Debtor's real estate located at 29 S. Olden Ave., Trenton, NJ 08609 Value=$40,000.00 Claimed priority int. = 1st Total amount of claim $117,453.68 (From petition schedules) | N | Y | To be crammed down to $40,000.00 the value of the collateral serving as security for the obligation. Total of $45,981.60 to be paid within 60 months of Effective Date representing payment in full plus 4.25% interest at the rate of $766.36 per month principal & interest. Lien to remain until total of $45,981.60 paid, then deemed paid in full and cancelled. The balance of Claim shall be reclassified as unsecured and treated as an unsecured claim. |
| 15 | Seterus Inc. Collateral= Debtor's real estate located at 48 S. Olden Ave., Trenton, NJ 08609 Value=$42,000.00 Claimed priority int. = 1st Total amount of claim $118,463.56 (From petition schedules) | N | Y | To be crammed down to $42,000.00 the value of the collateral serving as security for the obligation. Total of $46,980.60 to be paid within 60 months of Effective Date representing payment in full plus 4.25% interest at the rate of $783.01 per month principal & interest. Lien to remain until total of $46,980.60 paid, then deemed paid in full and cancelled. The balance of Claim shall be reclassified as unsecured and treated as an unsecured claim. |
| 16 | Seterus Inc. Collateral= Debtor's real estate located at 1420 Genesee Street, Trenton, | N | Y | To be crammed down to $50,000.00 the value of the collateral serving |

24

| | | | | |
|---|---|---|---|---|
| | NJ 08610<br>Value=$50,000.00<br>Claimed priority int. = 1st<br>Total amount of claim<br>$145,157.70 (Filed Claim<br>#11-1) | | | as security for the obligation. Total of $64,375.20 to be paid within 120 months of Effective Date representing payment in full plus 5.25% interest at the rate of $536.46 per month principal & interest. Lien to remain until total of $64,375.20 paid, then deemed paid in full and cancelled. The balance of Claim #11-1 shall be reclassified as unsecured and treated as an unsecured claim. |
| 17 | Wells Fargo Bank, N.A.c/o WF Business Direct<br>Collateral= Debtor's real estate located at 1420 Genesee Street, Trenton, NJ 08610<br>Value=$46,000.00<br>Claimed priority int. = 2nd<br>Total amount of unsecured claim $131,552.28 (From petition schedules) | N | N | Second mortgage lien has been cancelled of record & loan deemed satisfied by lender. |
| 18 | Seterus Inc.<br>Collateral= Debtor's real estate located at 5 Cortelyou Road, Jackson, NJ 08527<br>Value=$375,000.00<br>Claimed priority int. = 1st<br>Total amount of claim $504,491.00 (From petition schedules) | N | Y | To be crammed down to $375,000.00 the value of the collateral serving as security for the obligation. Total of $449,384.00 to be paid within 60 months of Effective Date representing payment in full plus 4.25% interest at the rate of $1,845.00 per month principal & interest for 59 months totaling $108,855.00 with a balloon payment of $340,529.00 from refinancing of the property on the 60th |

| | | | |
|---|---|---|---|
| | | | month. Lien to remain until total of $449,384.00 paid in accordance with the aforesaid, then deemed paid in full and cancelled. The balance of Claim shall be reclassified as unsecured and treated as an unsecured claim. |
| | **TOTAL SECURED CLAIMS = $2,673,012.90** | Impaired classes are entitled to vote on plan | |

**B.    Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impaired | Treatment |
|---|---|---|---|
| | **TOTAL PRIORITY UNSECURED CLAIMS** | | Not Applicable |

**C.    Class(es) of General Unsecured Claims.**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 19, which contains general unsecured Claims against the Debtor:

| Class # | Description | Impaired | Treatment |
|---|---|---|---|
| 19 | Discover Bank /Discover Products Inc. Total amount of claim = | Y | Undisputed. To receive pro-rata portion from base plan totaling $270.00, paid monthly, beginning |

26

| | | | |
|---|---|---|---|
| | $9,025.91 (Filed Claim#1-1) | | 25 months after the Effective Date of the Plan and continuing through the 60th month. |
| 19 | American Infosource LP, agent for DirectTV, LLC Total amount of claim = $91.64(Filed Claim #4-1) | Y | Undisputed. To receive pro rata portion from base plan totaling $3.00, paid monthly, beginning 25 months after the Effective Date of the Plan and continuing through the 60th month. |
| 19 | Homevestors of America Total amount of claim = $16,172.00 (From petition schedules) | Y | Disputed. Motion to expunge to be filed. |
| 19 | I C Systems Total amount of claim = $1,914.00 (From petition schedules) | Y | Disputed. Motion to expunge to be filed. |
| 19 | Kelvin McLaurin Total amount of claim = $3,000.00 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $90.00 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Mercantile Adjustment Bureau Total amount of claim = $1,089.00 (From petition schedules) | Y | Disputed. Motion to expunge to be filed. |
| 19 | Sonia Darden Total amount of claim = $3,600.00 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $108.00 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Sure Recovery Service Total amount of claim = $25.00 (From petition schedules) | Y | Disputed. Motion to expunge to be filed. |
| 19 | Todd Jackson Total amount of claim = $2,600.00 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $78.00 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Tony Reaves Total amount of claim = $6,000.00 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $180.00 paid monthly, beginning 25 months after the effective date |

| | | | |
|---|---|---|---|
| | | | of the Plan and continuing through the 60th month. |
| 19 | Wells Fargo Bank, N.A.c/o Americas Servicing CompanyRe: Debtor's real estate located at 44 S. Hermitage Ave, Trenton, NJ 08618 Total amount of unsecured claim $204,661.17 (Balance of Filed Claim #8-1) | Y | Undisputed. To receive pro-rata portion from base plan totaling $6,139.80 paid monthly, beginning 250months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Nationstar Mortgage LLC Re:Debtor's real estate located at on 52 S. Olden Ave., Trenton, NJ 08609 Total amount of unsecured claim $82,482.55 (Balance of Filed Claim #6-1) | Y | Undisputed. To receive pro-rata portion from base plan totaling $2,474.47 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Deutsche Bank National Trust Co. Re: Debtor's real estate located at 324 Mary Street, Hamilton, NJ 08610 Total amount of unsecured claim $73,380.00 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $2,201.40 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | US Bank National Assn c/o Nationstar Mortgage LLC Re: Debtor's real estate located at 631 Norway Ave., Hamilton, NJ 08629 Total amount of unsecured claim $49,793.63 (Balance of Filed Claim #5-1) | Y | Undisputed. To receive pro-rata portion from base plan totaling $1,493.80 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | US Bank National Assn c/o Nationstar Mortgage LLC Re: Debtor's real estate located at 251 Woodlawn Ave., Hamilton, NJ 08609 Total amount of unsecured claim $51,189.61 (Balance of Filed Claim #3-1 ) | Y | Undisputed. To receive pro-rata portion from base plan totaling $1,535.69 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Deutsche Bank National Trust Co. c/o Ocwen Loan Servicing LLC Re:Debtor's real estate located at 219 Woodlawn Ave., Hamilton, NJ 08609 Total amount of unsecured | Y | Undisputed. To receive pro-rata portion from base plan totaling $1,789.73 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |

| | | | |
|---|---|---|---|
| | claim $59,657.73 (Balance of Filed Claim #10-1) | | |
| 19 | Ocwen Loan Servicing LLC Re: Debtor's real estate located at 196 Rosemont Ave., Trenton, NJ 08618 Total amount of unsecured claim $82,306.99 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $2,469.00 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Deutsche Bank National Trust Co. c/o Ocwen Loan Servicing LLC Re:Debtor's real estate located at 244 Cleveland Ave., Trenton, NJ 08629 Total amount of unsecured claim $103,908.48 (Balance of Filed Claim #9-1) | Y | Undisputed. To receive pro-rata portion from base plan totaling $3,117.25 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Ocwen Loan Servicing LLC Re: Debtor's real estate located at 329 Cleveland Ave., Trenton, NJ 08629 Total amount of unsecured claim $104,644.25 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $3,139.32 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Ocwen Loan Servicing LLC Re: Debtor's real estate located at 343 Garfield Ave., Trenton, NJ 08629 Total amount of unsecured claim $111,250.50 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $3,337.51 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Seterus Inc. Re: Debtor's real estate located at 29 S. Olden Ave., Trenton, NJ 08609 Total amount of unsecured claim $92,225.68 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $2,767.00 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Seterus Inc. Re: Debtor's real estate located at 48 S. Olden Ave., Trenton, NJ 08609 Total amount of unsecured claim $76,463.56 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $2,855.00 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
| 19 | Seterus Inc. Re: Debtor's real estate | Y | Undisputed. To receive pro-rata portion from base plan totaling |

|   | located at 1420 Genesee Street, Trenton, NJ 08610 Total amount of unsecured claim $85,552.28 (Balance of Filed Claim #11-1) |   | $2,566.57 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
|---|---|---|---|
| 19 | Seterus Inc. Re: Debtor's real estate located at 5 Cortelyou Road, Jackson, NJ 08527 Total amount of unsecured claim $129,491.00 (From petition schedules) | Y | Undisputed. To receive pro-rata portion from base plan totaling $3,885.00 paid monthly, beginning 25 months after the effective date of the Plan and continuing through the 60th month. |
|   | **TOTAL ALLOWED GENERAL, UNSECURED CLAIMS = $1,340,930.47** | Impaired claims in this class are entitled to vote on plan | **$40,500.00 = 3.24% dividend** |

D.     Class(es) of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impaired | Treatment |
|---|---|---|---|
| 20 | Kenneth G. McNeil | Not impaired; claims in this class are not entitled to vote on Plan and are deemed to have accepted Plan. | Will retain equity interests. |

**2.3.    Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within ninety (90) days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

The following creditors were listed in Debtor's schedules as possessing claims which were either disputed, contingent or unliquidated, did not file a proof of claim and, as such, shall not be treated as creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003 (c) (2):

| Creditor | Amount | Listed |
|---|---|---|
| Homevestors of America | $16,172.00 | Yes |
| Mercantile Adjustment Bureau | $ 1,089.00 | Yes |
| I C Systems | $ 1,914.00 | Yes |

**2.4.    Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Debtor will not seek to assume any executory contracts.

Check all that apply:

[X]  Assumption of Executory Contracts.

31

The Executory Contracts shown on Exhibit R shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Exhibit __ also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ] Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit _____ shall be assumed by the Debtor and assigned to the party listed in that Exhibit. Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ] Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit __ shall be rejected by the Debtor.

32

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit __, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is _____.** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

2.5.    **Means for Implementation of the Plan.**

In an effort to remedy the problems that led to the bankruptcy filing, Debtor has implemented the following practices and procedures: The Debtor is realistically committed to provide appropriate payment to its creditors which are deemed to possess meritorious, allowable claims through the income generated by Debtor's continuing income from his long term disability insurance, his social security disability income and his net rental income from his fifteen (15) residential investment properties; by cramming down Debtor's mortgages on his residential investments properties to their respective property's fair market value or agreed upon value and paying same in full on a monthly basis for sixty (60) to one hundred twenty (120) months at 4.25% to 5.75% interest, thereby reducing monthly property carrying costs to generate additional cash flow for use to pay creditors with the remaining mortgagee claims will become part of the class of allowed general unsecured claims; and by exchanging a 5% equity interest in Debtor's properties for a $10,000.00 "new value" payment from an unrelated investor.

The distributions contemplated under the Plan shall be paid from the Debtor's post-petition income generated as aforesaid. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date. It is expected that Debtor shall have no remaining indebtedness other than that associated with the Plan.

As provided in Paragraph 2.1 of this Combined Plan and Disclosure Statement, all United States Trustee Fees accrued prior to the Effective Date shall be paid in full, on or before the Effective Date, by the Debtor. All United States Trustee Fees which accrue post-Effective Date shall be paid in full on a timely basis by the Debtor prior to the Debtor's case being closed, converted or dismissed.

**2.6.    Disbursing Agent.**

Distributions to Creditors provided for in this Plan will be made by the Debtor who shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan.

**2.7.    Post-Confirmation Management.**

The Debtor shall manage his post-confirmation operations and affairs.

**2.8.    Tax Consequences of the Plan.**

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.**

The following are the anticipated tax consequences of the Plan: The Debtor does not anticipate that the Plan will have any extraordinary tax consequences on the Debtor's tax liability.

**2.9.    Risk Factors/Mitigating Factors.**

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary

34

with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation: The greatest risks are that the Debtor's net rental post-petition income and/or the other actions proposed and/or to be realized by Debtor herein contemplated may not be sufficient or timely enough to make the payments required under the Plan.

## ARTICLE 3-FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.   Ability to Initially Fund Plan.

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  This represents the first of two important aspects of a feasibility analysis. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| **Cash Debtor estimates it will have on hand by Effective Date** | $100,000.00 |
| **To Pay:** Administrative claims; | $ 18,000.00 |
| **To Pay:** Statutory costs and charges; | $     0.00 |
| **To Pay:** Other Plan Payments due on Effective Date and/or as hereinabove proposed. | $ 67,144.66 |
| Balance after paying these amounts. | $ 14,855.34 |

The sources of the cash Debtor will have on hand by the Effective Date, are:

| | |
|---|---|
| $100,000.00 | Cash in Authorized Accounts |
| $ | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| | |
| $100,000.00 | Total |

**3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.  This represents the second of the two important aspects of a feasibility analysis. The Proponent believes that this second aspect of the feasibility requirement is satisfied based upon Debtor's continued receipt of income from his long term disability insurance, his social security disability income and his net rental income from his fifteen (15) residential investment properties; by cramming down Debtor's mortgages on his residential investments properties; paying a 3.24% dividend to allowed, unsecured creditor class claims commencing within 25 months from the effective date and continuing through the 60th month of the effective date; and by exchanging a 5% equity interest in Debtor's properties for a $10,000.00 "new value" payment. Without the need to deal with his present debt burdens, Debtor will continue to generate positive cash flow sufficient to contribute to the requirements of the Plan. See Financial Projections, included herewith as Exhibit A.

In summary, the Plan proposes to pay allowed, secured claim the value of its collateral, priority claims in full plus a dividend of $40,500.00 in equal monthly installments from 25 month after the effective date through the 60th month thereafter to allowed, unsecured, non-priority claims. It is projected that the Debtor will have an average cash flow, after paying operating expenses, of approximately $4,644.00 each month. That amount will fund the proposed Plan payments of administrative fees, secured claims, priority claims plus a total dividend payment of $40,500.00 pro rata, to the allowed unsecured, non-priority creditors.  The final Plan payment is expected to be paid by the end of the 120th month following the Plan's Effective Date. The Plan Proponent contends that Debtor's financial projections are feasible in light of the conservative projections of income for the anticipated, prospective economic future. The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after

36

paying operating expenses and post-confirmation taxes, of $4,644.00. Furthermore, as previously indicated, the Debtor is genuinely committed to fund a Plan which will pay administrative expenses, allowed secured claims, allowed priority claims in full, if any, and a total dividend of $40,500.00 to allowed unsecured, non-priority claims. The final Plan payment is expected to be paid on or about December, 2025. Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4 -LIQUIDATION VALUATION.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. See Sections 1.4 and 1.5 above for a comparison of Debtor's assets and liabilities. This manifests the fact that in a Chapter 7, nothing would be available for distribution to unsecured creditors.

## ARTICLE 5-DISCHARGE.

**[If the Debtor is not entitled to discharge under 11 U.S.C. § 1141(d)(3) change this heading to "NO DISCHARGE OF DEBTOR."]**

5.1.   **[Option 1 – If Debtor is an individual and § 1141(d)(3) is not applicable]**

Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. **Option 1 is applicable in this case.**

**[Option 2 -- If the Debtor is a partnership and section 1141(d)(3) of the Code is not**

37

applicable]

_Discharge._ On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

**[Option 3 -- If the Debtor is a corporation and § 1141(d)(3) is not applicable]**

_Discharge._ On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

**[Option 4 – If § 1141(d)(3) is applicable]**

_No Discharge._ In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

## ARTICLE 6-GENERAL PROVISIONS

**6.1.    Title to Assets.**

Except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors and equity security holders of the Debtor.

**6.2.    Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to

38

in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such

entity.

**6.3.    Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in

no way limit or affect the enforceability and operative effect of any other provision of this

Plan.

**6.4.    Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the

following matters: (i) to make such orders as are necessary or appropriate to implement the

provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to

rule on any modification of the Plan proposed under § 1127; (iii) to hear and allow all

applications for compensation to professionals and other Administrative Expenses; (iv) to

resolve all issues regarding Claims objections, and issues arising from the assumption/rejection

of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which

may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.    Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect

the meaning or interpretation of this Plan.

**6.6.    Modification of Plan.**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.

However, the Bankruptcy Court may require a new disclosure statement and/or revoting on

the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if

(1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the

39

proposed modifications after notice and a hearing.

**6.7.    Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the
Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Bankruptcy
Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy
Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may
enter such a final decree on its own motion.

**6.8.    Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and
records, financial projections, and the personal knowledge of the Debtor. The information
contained in this Disclosure Statement is provided by the Debtor. The Plan Proponent represents
that everything stated in this Disclosure Statement is true to Proponent's best knowledge.

**6.9.    No Levy.**

The distributions made pursuant to the attached Plan shall not be subject to levy,
garnishment, attachment or like legal process by any person of any claimed subordination
agreement, right to avoid payments or transfers, guaranties or otherwise (unless specifically
provided for under the attached Plan), so that each Creditor will have and receive the full benefit, if
any, of distributions provided under this Plan.

**6.10    Filing of Additional Documents.**

On or before the Effective Date, the Debtor may file with the Court such agreements and
other documents which may be necessary or appropriate to effectuate and further evidence the
terms and conditions of the attached Plan. In addition, the Court, to the extent necessary, shall
direct any party to execute all appropriate documents and instruments to implement or further the
provisions of the Plan.

**6.11.    Privilege.**

The Debtor shall derive the benefit of the privileges between the Debtor and the Debtor's attorneys and accountants and the protections afforded by the work-product doctrine, which privilege and protection may not be transferred, conveyed or assigned to any other party.

**6.12    Governing Law.**

Except to the extent that the Code is applicable, the rights and obligations arising under the Plan and any documents, instruments or agreements executed in connection with the Plan (except as otherwise indicated in such documents, instruments or agreements) shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law thereof and, to the extent not inconsistent with the Plan and the Disclosure Statement.

**6.13.    Successors and Assigns.**

The rights, duties and obligation of any Person named or referred to in the attached Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such Person.

**6.14.    Presentation of Plan Distributions; Undeliverable Distributions.**

Any person who receives a check pursuant to the Plan must present the check for payment within sixty (60) days of its date of issuance. Any checks not presented within such sixty (60) day period will be void in accordance with the terms of the Plan.

**6.15.    Prepayment.**

Nothing contained in the Plan shall constitute a waiver of Debtor's right to prepay any creditors whose Allowed Claims are being paid through the Plan.

**6.16.    Default.**

No default shall be declared under the Plan unless the payments due under said Plan have not been made within thirty (30) days after said payments were to have been paid pursuant to the

41

terms of the Plan, and written notice of such failure to make payment is given to Debtor and

Debtor's counsel.

**6.17.    Cancellation of Judgments and/or Other Liens.**

Any and/or all creditors with judgment and/or other liens of record for an allowed secured

and/or unsecured claim against Debtor shall cancel of record any and/or all judgment and/or other

liens of record, against Debtor(s), upon receipt of payment in full of its claim and/or pro-rata dividend

share in accordance with the Confirmed Plan.

## ARTICLE 7-ATTACHMENTS

The following documents accompany the Combined Plan and Disclosure Statement

[check those applicable, and list any other attachments here]:

[x]    Financial forecast for the Debtor, annexed as Exhibit A.

[x]    Debtor's most recent income/financial statements issued before bankruptcy,

annexed as Exhibit B.

[x]    Debtor's Appraisals at Fair Market Value, annexed as Exhibits C through Q.

[ ]    Debtor's most recent post-petition operating report filed since the

commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[ ]    Summary of the Debtor's periodic operating reports filed since the

commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[x]    Executory Contracts and Unexpired Leases, to be Assumed annexed as

Exhibit R.

[ ]    Executory Contracts and Unexpired Leases to be Assumed and Assigned,

annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases to be Rejected, annexed as

Exhibit ___.

42

[ ]    Tables showing the amount of cash on hand as of the Effective Date, and

the sources of that cash, annexed as Exhibit ___.

[ ]    Liquidation Analysis, annexed as Exhibit   .

## ARTICLE 8-FREQUENTLY ASKED QUESTIONS

**What Is the [DEBTOR] Attempting to Do in Chapter 11?**  Chapter 11 is the principal

reorganization chapter of the Bankruptcy Code.    Under Chapter 11, a debtor attempts to

restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the

primary goal of Chapter 11.  When reorganization is not feasible, however, a debtor may propose a

liquidating plan under Chapter 11.  The plan is the legal document which sets forth the manner and

the means by which holders of claims against a debtor will be treated.

**If the Plan of Reorganization [or Liquidation] Is the Document That Governs How a**

**Claim Will Be Treated, Why Am I Receiving This Combined Plan and Disclosure**

**Statement?**  In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code

requires that a debtor solicit acceptances of a proposed plan, which it is doing with this combined Plan

and Disclosure Statement.  If the creditors are satisfied with the information provided in the Plan and

the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of

ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the

Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or

interest, you must first determine whether your claim is secured or unsecured.  Your claim is secured

if you have a validly perfected security interest in collateral owned by the Debtor.  If you do not have

any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment

provided to the class in which you are grouped.  The pertinent section of the Plan dealing with that

class will explain, among other things, who is in that class, what is the size of the class, what

43

you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.   Paragraph/Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan.   If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan to the creditors are shown.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

In this case, the Proponent believes that classes 1, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, and 19 are impaired and that holders of claims in these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that classes 2, 9, 17 and 20 is unimpaired and that holders of claims in these classes therefore do not have the right to vote to accept or reject the Plan.

44

Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class as aforesaid.

**How Do I Determine Whether I Am in an Impaired Class?** Section/ Paragraph 2.2 of the Plan identifies the classes of creditors whose claims are impaired.   If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**   The Plan is being distributed to all claim holders for their review, consideration and approval.   The deadline by which ballots must be returned is _____.   Ballots should be mailed to the following address:   Scott E. Kaplan, Esquire c/o Law Offices of Scott E. Kaplan, LLC, 12 N. Main Street, P.O. Box 157, Allentown, New Jersey 08501.

**How Do I Determine When and How Much I Will Be Paid?**   In Section/Paragraph 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9-DEFINITIONS

**9.1.**   **Scope of Definitions:**   The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.**   **Administrative Claimant:**   Any person entitled to payment of an administration Expense.

**9.3.**   **Administrative Convenience Class:**   A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

45

**9.4.    Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under §507(a)(2) of the Code and allowed under §503(b) of the Code, including without limitation, any actual and necessary expenses of reserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5    Administrative Tax Claim:** Any tax incurred pursuant to §503(b)(1)(B) of the Code.

**9.6.    Allowed Claim:** Any claim against the Debtor pursuant to §502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.    Allowed Priority Tax Claim:** A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code.

**9.9.    Allowed Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court:** The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case:** This case under chapter 11 of the Bankruptcy Code in which Kenneth G. McNeil is the Debtor-in-Possession.

**9.15    Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Committee:** Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to §1102 of the Bankruptcy Code.

**9.18.    Confirmation:** The entry by the Bankruptcy Court of an order confirming this Combined Plan and Disclosure Statement.

**9.19.    Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.20.**    **Confirmation Hearing:** The hearing to be held on _____ to consider confirmation of the Plan.

**9.21.**    **Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.22.**    **Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.23.**    **Debtor and Debtor-in-Possession:** Kenneth G. McNeil, the debtor-in-possession in this chapter 11 case.

**9.24.**    **Disputed Claim:** Any claim against the Debtor pursuant to § 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.25.**    **Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.26.**    **Effective Date:** _____

[D.N.J. LBR 3016-1(b) provides that "Unless a plan provides otherwise, its effective date shall be the date on which the order of confirmation becomes final."].

**9.27.**    **Equity Interest:** An ownership interest in the Debtor.

**9.28.**    **Executory Contracts:** All unexpired leases and executory contracts as described in § 365 of the Bankruptcy Code.

**9.29.**    **Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.30.**    **IRC:** The Internal Revenue Code.

**9.31.**    **Petition Date:** March 11, 2015, the date the chapter 11 petition for relief was filed.

**9.32.**    **Plan:** This Combined Plan and Disclosure Statement, either in its present form or as it may be

48

altered, amended, or modified from time to time.

**9.33.    Plan Proponent:** The individual or entity that has filed this Combined Plan and Disclosure Statement.

**9.34.    Priority Tax Claim:** Any Claim entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

**9.35.    Reorganized Debtor:** The Debtor after the Effective Date.

**9.36.    Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.37.    Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

**9.38.    Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

Dated: December 28, 2015                By:  /s/ Scott E. Kaplan_____
                                             Scott E. Kaplan,          Attorney for Debtor

**March 22, 2017 Notes:**

1. **Debtor hereby incorporates by reference all the terms and conditions set forth in the Consent Orders Resolving Objections to Confirmation agreed to by the parties hereto and entered by the Court in connection herewith.**

2. **Exhibits C through Q (appraisals) hereinabove referenced have been omitted from the Order Confirming Plan.**

Kenneth McNeil
15-14218
Plan Projections Year 1
Calendar Year 2017

*(The main body of this page is a wide, rotated financial-projection spreadsheet. Column headers across the top identify individual properties, each with year 2017:)*

Personal | 1602 Bernard, Hamilton NJ | 196 Roosevelt, Trenton NJ | 210 Woodland, Hamilton NJ | 244 Cleveland, Trenton NJ | 351 Woodcom, Hamilton NJ | 29 S Olden, Trenton NJ | 334 Mary St, Hamilton NJ | 229 Cleveland, Trenton NJ | 346 Garfield, Trenton NJ | 44 S Hermitage, Trenton NJ | 48 S Olden, Trenton NJ | 6 Coleliston Rd, Jackson NJ | 125 Olden, Trenton NJ | 58 Edgmere, Trenton NJ | 424 Swanty, Hamilton NJ | Total Properties | TOTAL

Row labels (left side):

- **Ordinary Monthly Expense**
- **Income**
  - Disability Income
  - Rental Income
  - Social Security
  - **Total Income**
- **Expenses**
  - **Repayments**
    - Cable, TV, Phone/Bus/Personal
    - Car Service Tax/Transportation
    - Food / Restaurant/Personal
    - Gas & Tolls
    - Health Club
    - Home Insurance
    - Housekeeping/Clothing/Laundry
    - Insurance
    - License/Fees
    - Medical
    - Mortgage Payable
    - Taxes/Income/Other
    - Real Estate Taxes
    - Utilities
  - **Total Disbursements**
  - **General Expenses**
    - Landscaping and Snow/Mowing
    - Property Management Co (Dollar 10% service)
    - Recit & Maintenance
    - Repair/Maintenance
  - **Total Gross Expenses**
  - **Total Expense**
- **Net Cash Inflow before Reorganization Expenses**
- **Reorganization Expenses**
  - Administrative
    - Partners/Admin (Historical $10,000 incurred $4,000)
    - Property Management (Historical $1,000 incurred $4,000)
    - Quarterly Fee paid on a Shared Basis Theory)
    - Escrow Advances (paid within 60 days of effective date)
    - Priority Unsecured (Note)
    - General Unsecured Partners (5% 1,495,500)
- **Net Cash Inflow (Outflow) after Reorganization Expenses**
- **Opening Cash**
- **Net Cash Position**

NOTES TO FINANCIAL PROJECTIONS:
NOTE 1: Income
Disability and Social Security Income increase with local cost of living. These increases have not been reported in the Plan Projections for Calendar Year 2018 through 2150
NOTE 2: Expenses
Expenses have been increased in years 2017 to 2031 by one percent in these period.
NOTE 3: Property Management Fees
These expenses represent 10% of Rental Income and are paid to a related party entity.
NOTE 4: New Value
contributions at $10,000.00 have unrelated third party investor - James Evers

NOTE 5: General Unsecured Claims and Condition
The General Unsecured Creditors represent those amounts reported as the petition as adjusted for actual Claims filed plus the total amount of the scheduled
mortgage balances. A dividend of 5%, or $43,228 in total of $43,228 per year, for 3 years totaling $19,059%. See Plan and Disclosure Statement for Cram Down
by Property and Unsecured Claims.
NOTE 6: Mortgage Payable
The Mortgage expense reflect current loan amounts. See Plan and Disclosure Statement for subscription of each property's terms.
NOTE 7: Past Petition Escrow Advances, in necessary, are being paid at post creditors as described in the Plan.

Kenneth McNeil
15-14218
Plan Projections Year 2
Calendar Year 2018

| | Personal 2018 | 1420 Genesee Trenton, NJ 2018 | 106 Bayonne Trenton, NJ 2018 | 218 Woodlawn Hamilton, NJ 2018 | 244 Cleveland Trenton, NJ 2018 | 351 Woodlawn Hamilton, NJ 2018 | 29 S Olden Trenton, NJ 2018 | 334 Mary St. Hamilton, NJ 2018 | 326 Cleveland Trenton, NJ 2018 | 343 Garfield Trenton, NJ 2018 | 44 S Hermitage Trenton, NJ 2018 | 46 S Olden Trenton, NJ 2018 | 5 Gatehouse Rd Dickinson, NJ 2018 | 62 S Olden Trenton, NJ 2018 | 69 Edgeware Trenton, NJ 2018 | 631 Mulvey Hamilton, NJ 2018 | Total Projection 2018 | TOTAL 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | | | | | |
| Disability Income | 26,431 | | | | | | | | | | | | | | | | | |
| Rental Income | | 15,600 | 13,200 | 16,800 | 15,600 | 17,400 | 13,800 | 13,800 | 12,300 | 14,400 | 25,200 | 13,800 | 37,200 | 13,800 | 17,400 | 17,400 | | 236,400 |
| Social Benefit | 24,241 | | | | | | | | | | | | | | | | | |
| **Total Income** | 50,772 | 15,600 | 13,200 | 16,800 | 15,600 | 17,400 | 13,800 | 13,800 | 12,300 | 14,400 | 25,200 | 13,800 | 37,200 | 13,800 | 17,400 | 17,400 | | 236,400 |
| **Expense** | | | | | | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| Cable, TV, Phone & Bus/Personal | 1,394 | | | | | | | | | | | | | | | | | |
| Car Service, Toll Transportation | 6,286 | | | | | | | | | | | | | | | | | |
| Food, Donations & Personal | 9,885 | | | | | | | | | | | | | | | | | |
| Gas & Tolls | 2,480 | | | | | | | | | | | | | | | | | |
| Health Care | 866 | | | | | | | | | | | | | | | | | 14,353 |
| Home Insurance | | 1,145 | 600 | 630 | 396 | 1,133 | 635 | 905 | 717 | 1,361 | 1,932 | 195 | 1,060 | 1,178 | 1,189 | | | |
| Homemaking/Cleaning/Laundry | 3,094 | | | | | | | | | | | | | | | | | 1,346 |
| Insurance | 4,327 | | 116 | 120 | 118 | 160 | 118 | 116 | 116 | 118 | 195 | 118 | 100 | 160 | | | | |
| License Fees | 4,906 | | | | | | | | | | | | | | | | | 197,066 |
| Medical | | 6,441 | 2,336 | 8,372 | 6,604 | 6,468 | 6,720 | 4,230 | 4,532 | 6,573 | 4,873 | 8,396 | 22,143 | 8,864 | 6,779 | | | |
| Mortgage Payable | 29 | | | | | | | | | | | | | | | | | 44,002 |
| Taxes Income & Other | | 1,890 | 2,837 | 1,646 | 3,121 | 1,877 | 2,274 | 2,395 | 2,202 | 2,766 | 3,058 | 2,498 | 10,571 | 3,922 | 2,418 | | | |
| Real Estate Taxes | 4,444 | | | | | | | | | | | | | | | | | 178,834 |
| Utilities | | | | | | | | | | | | | | | | | | |
| **Total Disbursements** | 36,725 | 9,576 | 5,778 | 10,667 | 9,164 | 8,428 | 9,771 | 9,928 | 1,328 | 10,722 | 13,932 | 13,349 | 34,215 | 13,454 | 15,956 | | | 178,556 |
| **General Expenses** | | | | | | | | | | | | | | | | | | |
| Landscaping and Groundskeeping | 514 | | | | | | | | | | | | | 490 | | | | 970 |
| Property Management (to Debtor 10% earned) | | 1,260 | 1,200 | 1,200 | 600 | 1,500 | 1,500 | 300 | 1,200 | 1,200 | 990 | 1,800 | 1,800 | 1,620 | 1,800 | | | 17,640 |
| Repairs and Maintenance | 21,890 | 1,224 | 1,224 | 1,334 | 1,224 | 1,234 | 306 | 1,224 | 1,224 | 1,224 | 1,535 | 1,224 | | 1,224 | | | | 15,366 |
| Telephone Expense | 5,849 | | | | | | | | | | | | | 3,314 | | | | 33,976 |
| **Total Expenses** | 29,093 | 2,424 | 2,024 | 2,534 | 1,824 | 2,625 | 2,001 | 606 | 2,424 | 2,424 | 4,540 | 3,924 | 3,820 | 14,286 | 3,821 | | | 134,767 |
| **Total Expense** | 60,593 | 3,648 | 3,202 | 3,200 | 10,988 | 16,545 | 48,655 | 9,782 | 1,328 | 15,912 | 16,474 | 16,272 | 38,035 | 16,268 | 13,180 | | | 313,576 |
| Net Cash Inflow before Reorganization Expenses | 60 | 3,539 | 2,996 | 3,509 | 4,971 | 8,246 | (1,640) | 3,615 | 2,558 | 1,236 | 6,729 | (2,676) | 3,010 | (2,986) | 3,728 | | | 34,813 |
| **Reorganization Expenses** | | | | | | | | | | | | | | | | | | |
| Amortization | | | | | | | | | | | | | | | | | | |
| Partner/penalties (Waiver Trust & to deferral 20%) | | | | | | | | | | | | | | | | | | |
| Paid Buyback & before holdings Claims Paid | | | | | | | | | | | | | | | | | | |
| Escrow/Payment | | | | | | | | | | | | | | | | | | |
| Annualization | | | | | | | | | | | | | | | | | | |
| General Unsecured Claims (1% of $1,540,835) | 80 | | | | | | | | | | | | | | | | | |
| Net Cash Inflow (Outflow) after Reorganization Expenses | 60 | 3,684 | 2,996 | 3,509 | 4,971 | 6,308 | (1,640) | 2,086 | 2,558 | 1,236 | 6,729 | (2,676) | 2,908 | (2,986) | 3,728 | | | 34,813 |
| Starting Cash | 102,608 | | | | | | | | | | | | | | | | | |
| Net Cash Position | 102,668 | 3,684 | 2,996 | 3,509 | 4,971 | 6,308 | (1,640) | 2,086 | 2,558 | 1,236 | 6,729 | (2,676) | 2,908 | (2,986) | 3,728 | | | 34,813 |

**NOTES TO FINANCIAL PROJECTIONS:**
NOTE 1: Income
Disability and Social Security Income increases with cost of living. These incomes have not been reported in the Plan Projections for Calendar Year 2017 through 2021
NOTE 2: Expenses
Expenses have been increased in years 2017 to 2021 by one percent to three percent.
NOTE 3: Property Management Fees
These expenses represent 10% of Rental Income and are paid to a related party entity.
NOTE 4: New Value
contributions of $10,000.00 from unrelated third party investor - James Evans

NOTES: General/Unsecured Creditors
The General/Unsecured Creditors represent lease amounts reported on the portion as adjusted for actual claims filed plus the total amount of the crammed down mortgage balances. A dividend of 5% of $46,225 to hold at $16,488 per year, for 5 years adding $10,000/yr. See Plan and Disclosure Statement for Cram Down by Property and Unsecured Claims.
NOTES: Mortgage Payable
The Mortgage payments reflect crammed down amounts. See Plan and Disclosure Statement for a description of each property's terms.
NOTE 1: Plan Paid from Escrow Advances - on being paid at confirmation as described in the Plan.

**Kenneth McNeill**
**15-14218**
**Plan Projections Year 3**
**Calendar Year 2019**

The page contains a wide, rotated financial projection spreadsheet. The column headers identify individual properties (e.g., 1422 Seneca – Hamilton, NJ; 166 Rosemont – Trenton, NJ; 215 Woodlawn – Hamilton, NJ; 244 Cleveland – Trenton, NJ; 331 Walnut – Plainfield, NJ; 28 S Olden – Trenton, NJ; 324 Mercer St – Hamilton, NJ; 326 Cleveland – Trenton, NJ; 244 Garfield – Trenton, NJ; 40 Garfield – Trenton, NJ; 44 S Hermitage – Trenton, NJ; 49 S Olden – Trenton, NJ; 6 Cortelyou Rd – Jackson, NJ; 23 S Olden – Trenton, NJ; 58 Edgemere – Hamilton, NJ; 337 Stanley – Trenton, NJ) plus a Personal column, a Total Projections 2019 column, and a TOTAL 2019 column.

Row labels (left column):

**Ordinary Income/Expense**
- Income
  - Rental Income
  - Rent/aSource
  - Social Security
  - Total Income
- Expenses
  - Disbursements
    - Cash, Pty Prin/Auto/Personal
    - Cash/aExpense Tax/aFlow/aperation
    - Fossil Abandance/Personal
    - Gift & TREC
    - Health Club
    - Home Insurance
    - Housekeeping/Clothing/Laundry
    - Insurance
    - License/Fees
    - Medical
    - Mortgage Payable
    - Taxes/Auto/Other
    - Real Estate Taxes
    - Utilities
    - Total Disbursements
  - General Expenses
    - Lawnkeeping and Grounds Keeping
    - Property Management Co (Dollar 140% earned)
    - Real Estate
    - Repairs and Maintenance
    - Total Lease Expense
- Total Expense
- Net Cash Inflow before Reorganization Expenses
- Reorganization Expenses
  - Administrator
  - Protection/aes Allowance (5% of $24,000)
  - Attorney (allow on a Unsecured Plans Trustee)
- Escrow Advances
  - Priority Fees (3% of $400,375)
  - General Fees (5% of $49,375)
- Net Cash Inflow (Outflow) after Reorganization Expenses
- Opening Cash
- Net Cash Position

**NOTE 5: General Unsecured Creditors**
The General Unsecured Creditors represent those amounts reported on the petition as adjusted for actual Claims filed plus the total amount of the reaffirmed down mortgage balances. A dividend of 5%, or $42,603 in total or $14,605 per year, for 3 years starting 01/01/2019. See Plan and Disclosure Statement for Cram Down by Property and Unsecured Claims.

**NOTE 6: Mortgage Payable**
The Mortgage payments reflect current down amounts. See Plan and Disclosure Statement for a description of each property's terms.

**NOTE 7: Paid Petition Escrow Advances, as necessary, are being paid at confirmation as described in the Plan.**

**NOTES re FINANCIAL PROJECTIONS:**
**NOTE 1: Income**
Disability and Social Security income decreases with local cost of living. These increases later not has reported in the Plan Projections for Calendar Year 2019 through 2021

**NOTE 2: Expenses**
Expenses have been increased in even 2017 to 2021 by one percent to three percent.

**NOTE 3: Property Management Fees**
These expenses are at 15%, of Rental Income and are paid to a related party entity.

**NOTE 4: New Value**
contribution at $50,000.00 from unrelated third party investor - James Evans.

Kenneth McKell
15-14218
Plan Projections Year 4
Calendar Year 2020



NOTES TO OPERATING PROJECTIONS:

NOTE 1: Expenses
Disability Income and Social Security Income estimates will be disclosed during these incomes have not been reported in the Plan Projections for Calendar Year 2017 through 2021.

NOTE 2: Estimates
Expense have been increased by 2% in 2019 to 2021 by net percent to these percents.

NOTE 3: Property Management Fees

NOTE 4: New Value
contributions of $49,000.00 from simulated third party member – Jarrett Simon.

NOTES TO OPERATING PROJECTIONS:
The General Unsecured Creditors represents those amounts reported on the petition as projected for actual figures that also the total amount of the estimated claim.
mortgage balances. A minimum of 2% of 50,000 or 6.00% estimated 5% a 60 per year, for 5 years starting 60/30/15, to Plan Plus and Disclosure Statement for Claim Claim by Property and Unsecured Claims.

NOTE 5: Mortgage Payable
The Mortgage payments reflect Unsecured claim amounts. See Plan and Disclosure Statement that is description of each property's terms.

NOTE 6: Post Petition Escrow Advances, is necessary, are being paid in addition to as described in the Plan.

Kenneth McNeil
15-14218
Plan Projections Year 5
Calendar Year 2021

| | Personal | 1420 Convery Boulevard NJ | 106 Richmond Somerville NJ | 219 Woodburn Hamilton NJ | 240 Richmond Hamilton NJ | 261 Woodburn Trenton NJ | 26 S Olden Trenton NJ | 74 S Olden Trenton NJ | 334 Mary St Trenton NJ | 124 Cleveland Trenton NJ | 345 Garfield Trenton NJ | 44 S Hermitage Trenton NJ | 456 Olden Trenton NJ | 5 Complex Rd Johnson NJ | 219 Wilton Johnson NJ | 59 Ridgewood Trenton NJ | 621 Monroy Hamilton NJ | Total Properties | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 |

*(Detailed line-item figures for Ordinary Income/Expense, Income, Disability Income, Rental Income, Total Income, Expenses, Disbursements, Repairs and Maintenance, Insurance, Utilities, Taxes, Total Expenses, Net Cash Inflow before Reorganization Expenses, Reorganization Expenses, Net Cash Position — values are not legibly reproducible at this resolution.)*

NOTES TO PROVISION PROJECTIONS:

NOTE 1: Income

Disability and Social Security income are net of tax.

NOTE 2: Expenses

Expenses have been increased by a rate.

NOTE 3: Property Management Fees

NOTE 4: Attorney Fees

NOTE 5: New Value

Contribution of $10,000.00 from unrelated third party member - James Byers.

NOTES: General Lines and Conditions
The General Lines and Conditions represent the amounts to be paid on the petition as allowed in the related Claims filed plus the total amount of the unsecured claims.

NOTE A: Mortgage Payable

The Mortgage payments will all come down in months. See Plan and Disclosure Statement for a description of each property's terms.

NOTE B: This property will be refinanced after month 60. The payments reflect a 30 year payout schedule with a balloon at the end of month 60.

# Form 1040 — U.S. Individual Income Tax Return 2014

Department of the Treasury — Internal Revenue Service

KENNETH G    MCNEIL

LAWRENCE    TWP

349 JOHNSON AVENUE

NJ    08648

Form 1040 (2014)

SCHEDULE C
(Form 1040)

## Profit or Loss From Business
(Sole Proprietorship)

OMB No. 1545-0074

**2014**

► Information about Schedule C and its separate instructions is at www.irs.gov/schedulec.
► Attach to Form 1040, 1040NR, or 1041; partnerships generally must file Form 1065.

Name of proprietor: **KENNETH G MCNEIL**

A  Principal business or profession, including product or service (see instructions)
**REAL ESTATE MANAGEMENT**

Business name. If no separate business name, leave blank
**STATE ROUGH PROPERTIES**

C  Business name. If no separate business name, leave blank

E  Business address (including suite or room no.) ► **349 JOHNSON AVENUE**
City, town or post office, state, and ZIP code **HAMMONTON NJ 08648**

B  Enter code from instructions
**531210**

D  Employer ID number (EIN), (see instr.)
**45-5890193**

### Part I  Income

| | | |
|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked | 1 | 26,316 |
| 2 | Returns and allowances | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | 26,316 |
| 4 | Cost of goods sold (from line 42) | 4 | 14,622 |
| 5 | Gross profit. Subtract line 4 from line 3 | 5 | 11,694 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) | 6 | |
| 7 | Gross income. Add lines 5 and 6 | 7 | 11,694 |

### Part II  Expenses. Enter expenses for business use of your home only on line 30.

| | | |
|---|---|---|
| 8 | Advertising | 8 | 3,464 |
| 9 | Car and truck expenses | 9 | |
| 10 | Commissions and fees | 10 | |
| 11 | Contract labor | 11 | |
| 12 | Depletion | 12 | |
| 13 | Depreciation and section 179 expense deduction | 13 | 345 |
| 14 | Employee benefit programs | 14 | |
| 15 | Insurance (other than health) | 15 | |
| 16 | Interest: | | |
| 16a | Mortgage (paid to banks, etc.) | 16a | |
| 16b | Other | 16b | |
| 17 | Legal and professional services | 17 | |
| 18 | Office expense | 18 | 2,733 |
| 19 | Pension and profit-sharing plans | 19 | |
| 20 | Rent or lease: | | |
| 20a | Vehicles, machinery, and equipment | 20a | |
| 20b | Other business property | 20b | |
| 21 | Repairs and maintenance | 21 | |
| 22 | Supplies (not included in Part III) | 22 | |
| 23 | Taxes and licenses | 23 | |
| 24 | Travel, meals, and entertainment: | | |
| 24a | Travel | 24a | |
| 24b | Deductible meals and entertainment | 24b | |
| 25 | Utilities | 25 | |
| 26 | Wages (less employment credits) | 26 | 832 |
| 27a | Other expenses (from line 48) | 27a | 4,645 |
| 27b | Reserved for future use | 27b | |
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27a | 28 | 12,033 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 | 29 | -345 |
| 30 | Expenses for business use of your home. Attach Form 8829 | 30 | |
| 31 | Net profit or (loss). Subtract line 30 from line 29 | 31 | -345 |
| 32 | If you have a loss, check the box that describes your investment in this activity (see instructions). | 32a ☐ All investment is at risk. 32b ☐ Some investment is not at risk. | |

For Paperwork Reduction Act Notice, see the separate instructions.    Schedule C (Form 1040) 2014

---

Schedule C (Form 1040) 2014   **KENNETH G MCNEIL   REAL ESTATE MANAGEMENT**   Page 2

### Part III  Cost of Goods Sold (see instructions)

| | | |
|---|---|---|
| 33 | Method(s) used to value closing inventory: a ☐ Cost  b ☐ Lower of cost or market  c ☐ Other (attach explanation) | | |
| 34 | Was there any change in determining quantities, costs, or valuations between opening and closing inventory? ☐ Yes ☐ No | | |
| 35 | Inventory at beginning of year. If different from last year's closing inventory, attach explanation | 35 | 0 |
| 36 | Purchases less cost of items withdrawn for personal use | 36 | |
| 37 | Cost of labor. Do not include any amounts paid to yourself | 37 | |
| 38 | Materials and supplies | 38 | 14,622 |
| 39 | Other costs | 39 | |
| 40 | Add lines 35 through 39 | 40 | 14,622 |
| 41 | Inventory at end of year | 41 | 0 |
| 42 | Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on line 4 | 42 | 14,622 |

### Part IV  Information on Your Vehicle. Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562.

| | |
|---|---|
| 43 | When did you place your vehicle in service for business purposes? (month, day, year) ► **01/01/12** |
| 44 | Of the total number of miles you drove your vehicle during 2014, enter the number of miles you used your vehicle for: |
| a | Business _____ b Commuting (see instructions) _____ c Other _____ |
| 45 | Was your vehicle available for personal use during off-duty hours? ☐ Yes ☐ No |
| 46 | Do you (or your spouse) have another vehicle available for personal use? ☐ Yes ☐ No |
| 47a | Do you have evidence to support your deduction? ☐ Yes ☐ No |
| b | If "Yes," is the evidence written? ☐ Yes ☐ No |

### Part V  Other Expenses. List below business expenses not included on lines 8-26 or line 30.

| | | |
|---|---|---|
| | MGMT ROYALTIES | 1,800 |
| | CARTAGE | 769 |
| | AUTO EXP | 2,034 |
| | VERIZON CELL PHONE | 42 | |
| 48 | Total other expenses. Enter here and on line 27a | 48 | 4,645 |

Schedule C (Form 1040) 2014

SCHEDULE D
(Form 1040)

Department of the Treasury
Internal Revenue Service

Capital Gains and Losses

▶ Attach to Form 1040 or Form 1040NR.
▶ Information about Schedule D and its separate instructions is at www.irs.gov/scheduled.
▶ Use Form 8949 to list your transactions for lines 1b, 2, 3, 8b, 9, and 10.

OMB No. 1545-0074
2014
Attachment
Sequence No. 12

KENNETH G MCNEILL

3034

**Part I  Short-Term Capital Gains and Losses — Assets Held One Year or Less**

| | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments | (h) Gain or (loss) |
|---|---|---|---|---|

| 7 | | | | (87,793) |

**Part II  Long-Term Capital Gains and Losses — Assets Held More Than One Year**

| | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments | (h) Gain or (loss) |
|---|---|---|---|---|

| 15 | | | | −184,590 |

| 16 | | | | −184,590 |

Schedule D (Form 1040) 2014

---

Schedule D (Form 1040) 2014

KENNETH G MCNEILL
3034
Page 2

**Part III  Summary**

| 16 | | −272,383 |
| 21 | | (1,500) |
| 22 | | |

Schedule D (Form 1040) 2014

SCHEDULE E
(Form 1040)

Supplemental Income and Loss

(From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.)

2014

KENNETH G MCNEIL
-3034

Income or Loss From Rental Real Estate and Royalties

SCHEDULE E
(Form 1040)

Department of the Treasury
Internal Revenue Service

**Supplemental Income and Loss**
(From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.)
▶ Attach to Form 1040, 1040NR, or Form 1041.
▶ Information about Schedule E and its separate instructions is at www.irs.gov/schedulee.

OMB No. 1545-0074

**2014**

Attachment Sequence No. **13**

Name(s) shown on return: KENNETH G MCNEIL

Your social security number: 3034

**Part I  Income or Loss From Rental Real Estate and Royalties** Note. If you are in the business of renting personal property, use Schedule C or C-EZ (see instructions). If you are an individual, report farm rental income or loss from Form 4835 on page 2, line 40.

A  Did you make any payments in 2014 that would require you to file Form(s) 1099? (see instructions)  ☐ Yes ☐ No

B  If "Yes," did you or will you file required Forms 1099?  ☐ Yes ☐ No

1a  Physical address of each property (street, city, state, ZIP code)
A  1616 WOODMERE AVE, PLEASANTVILLE, NJ 08232
B
C

| Type of Property | | | Fair Rental Days | Personal Use Days | QJV |
|---|---|---|---|---|---|
| A | 2 | | 365 | | |
| B | | | 365 | | |
| C | | | 365 | | |

Type of Property:
1 Single Family Residence   3 Vacation/Short-Term Rental   5 Land   7 Self-Rental
2 Multi-Family Residence   4 Commercial   6 Royalties   8 Other (describe)

| Income: | Properties: | A | B | C |
|---|---|---|---|---|
| 3 Rents received | 3 | 9,500 | | |
| 4 Royalties received | 4 | | | |

| Expenses: | | | | |
|---|---|---|---|---|
| 5 Advertising | 5 | | | |
| 6 Auto and travel (see instructions) | 6 | | | |
| 7 Cleaning and maintenance | 7 | 1,028 | | |
| 8 Commissions | 8 | | | |
| 9 Insurance | 9 | 1,426 | | |
| 10 Legal and other professional fees | 10 | 8,828 | | |
| 11 Management fees | 11 | | | |
| 12 Mortgage interest paid to banks, etc. (see instructions) | 12 | 972 | | |
| 13 Other interest | 13 | | | |
| 14 Repairs | 14 | 167 | | |
| 15 Supplies | 15 | | | |
| 16 Taxes | 16 | 3,729 | | |
| 17 Utilities | 17 | | | |
| 18 Depreciation expense or depletion | 18 | | | |
| 19 Other (list) ▶ | 19 | | | |
| 20 Total expenses. Add lines 5 through 19 | 20 | 15,896 | | |
| 21 Subtract line 20 from line 3 (rents) and/or 4 (royalties). If result is a (loss), see instructions to find out if you must file Form 6198 | 21 | -6,316 | | |
| 22 Deductible rental real estate loss after limitation (if any), on Form 8582 (see instructions) | 22 | 934 | | |
| 23a Total of all amounts reported on line 3 for all rental properties | 23a | 9,500 | | |
| 23b Total of all amounts reported on line 4 for all royalty properties | 23b | | | |
| 23c Total of all amounts reported on line 12 for all properties | 23c | | | |
| 23d Total of all amounts reported on line 18 for all properties | 23d | | | |
| 23e Total of all amounts reported on line 20 for all properties | 23e | | | |
| 24 Income. Add positive amounts shown on line 21. Do not include any losses | 24 | | | |
| 25 Losses. Add royalty losses from line 21 and rental real estate losses from line 22. Enter total losses here | 25 | 684 | | |
| 26 Total rental real estate and royalty income or (loss). Combine lines 24 and 25. Enter the result here. If Parts II, III, IV, and line 40 on page 2 do not apply to you, also enter this amount on Form 1040, line 17, or Form 1040NR, line 18. Otherwise, include this amount in the total on line 41 on page 2 | 26 | 2,276 | | |

For Paperwork Reduction Act Notice, see the separate instructions.  Schedule E (Form 1040) 2014

---

SCHEDULE E
(Form 1040)

Department of the Treasury
Internal Revenue Service

**Supplemental Income and Loss**
(From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.)
▶ Attach to Form 1040, 1040NR, or Form 1041.
▶ Information about Schedule E and its separate instructions is at www.irs.gov/schedulee.

OMB No. 1545-0074

**2014**

Attachment Sequence No. **13**

Name(s) shown on return: KENNETH G MCNEIL

Your social security number: 3034

**Part I  Income or Loss From Rental Real Estate and Royalties** Note. If you are in the business of renting personal property, use Schedule C or C-EZ (see instructions). If you are an individual, report farm rental income or loss from Form 4835 on page 2, line 40.

A  Did you make any payments in 2014 that would require you to file Form(s) 1099? (see instructions)  ☐ Yes ☐ No

B  If "Yes," did you or will you file required Forms 1099?  ☐ Yes ☐ No

1a  Physical address of each property (street, city, state, ZIP code)
A  16 AMBER AVE, PENNSAUKEN, NJ 08110
B
C

| Type of Property | | | Fair Rental Days | Personal Use Days | QJV |
|---|---|---|---|---|---|
| A | 1 | | 365 | | |
| B | | | 365 | | |
| C | | | 365 | | |

Type of Property:
1 Single Family Residence   3 Vacation/Short-Term Rental   5 Land   7 Self-Rental
2 Multi-Family Residence   4 Commercial   6 Royalties   8 Other (describe)

| Income: | Properties: | A | B | C |
|---|---|---|---|---|
| 3 Rents received | 3 | 7,966 | | |
| 4 Royalties received | 4 | | | |

| Expenses: | | | | |
|---|---|---|---|---|
| 5 Advertising | 5 | | | |
| 6 Auto and travel (see instructions) | 6 | | | |
| 7 Cleaning and maintenance | 7 | 444 | | |
| 8 Commissions | 8 | | | |
| 9 Insurance | 9 | 1,395 | | |
| 10 Legal and other professional fees | 10 | | | |
| 11 Management fees | 11 | 972 | | |
| 12 Mortgage interest paid to banks, etc. (see instructions) | 12 | 825 | | |
| 13 Other interest | 13 | 7,262 | | |
| 14 Repairs | 14 | 297 | | |
| 15 Supplies | 15 | 2,067 | | |
| 16 Taxes | 16 | 3,788 | | |
| 17 Utilities | 17 | 2,303 | | |
| 18 Depreciation expense or depletion (see instructions) | 18 | 350 | 354 | |
| 19 Other (list) ▶ See Statement 11,12,13 | 19 | 624 | | |
| 20 Total expenses. Add lines 5 through 19 | 20 | 15,652 | | |
| 21 Subtract line 20 from line 3 (rents) and/or 4 (royalties). If result is a (loss), see instructions to find out if you must file Form 6198 | 21 | -10,112 | | |
| 22 Deductible rental real estate loss after limitation (if any), on Form 8582 (see instructions) | 22 | 0 | 1,097 | |
| 23a Total of all amounts reported on line 3 for all rental properties | 23a | 7,966 | | |
| 23b Total of all amounts reported on line 4 for all royalty properties | 23b | | | |
| 23c Total of all amounts reported on line 12 for all properties | 23c | | | |
| 23d Total of all amounts reported on line 18 for all properties | 23d | 365 | | |
| 23e Total of all amounts reported on line 20 for all properties | 23e | | | |
| 24 Income. Add positive amounts shown on line 21. Do not include any losses | 24 | | 0 | |
| 25 Losses. Add royalty losses from line 21 and rental real estate losses from line 22. Enter total losses here | 25 | 1,097 | | |
| 26 Total rental real estate and royalty income or (loss). Combine lines 24 and 25. Enter the result here. If Parts II, III, IV, and line 40 on page 2 do not apply to you, also enter this amount on Form 1040, line 17, or Form 1040NR, line 18. Otherwise, include this amount in the total on line 41 on page 2 | 26 | 2,987 | | |

For Paperwork Reduction Act Notice, see the separate instructions.  Schedule E (Form 1040) 2014

SCHEDULE E
(Form 1040)

Supplemental Income and Loss

2014

KENNETH G MCNEIL

Part I  Income or Loss From Rental Real Estate and Royalties

SCHEDULE E
(Form 1040)

Supplemental Income and Loss

2014

KENNETH G MCNEIL

Part I  Income or Loss From Rental Real Estate and Royalties

SCHEDULE E
(Form 1040)

Department of the Treasury
Internal Revenue Service

Supplemental Income and Loss
(From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.)
▶ Attach to Form 1040, 1040NR, or Form 1041.
▶ Information about Schedule E and its separate instructions is at www.irs.gov/schedulee.

OMB No. 1545-0074
2014
Attachment Sequence No. 13

Name(s) shown on return: KENNETH G MCKELL
Your social security number: 3034

**Part I** Income or Loss From Rental Real Estate and Royalties

1a Physical address of each property
A 8 PARKWAY DRIVE  JACKSON, NJ 08527

Type of Property: 3 Single Family Residence  4 Commercial  Vacation/Short-Term Rental

| | Properties | A | B | C |
|---|---|---|---|---|
| 3 Rents received | 3 | 6,450 | | |
| 4 Royalties received | 4 | | | |
| **Expenses:** | | | | |
| 5 Advertising | 5 | | | |
| 6 Auto and travel | 6 | | | |
| 7 Cleaning and maintenance | 7 | | | |
| 8 Commissions | 8 | | | |
| 9 Insurance | 9 | 968 | | |
| 10 Legal and other professional fees | 10 | | | |
| 11 Management fees | 11 | | | |
| 12 Mortgage interest paid to banks, etc. | 12 | 1,811 | | |
| 13 Other interest | 13 | | | |
| 14 Repairs | 14 | | | |
| 15 Supplies | 15 | | | |
| 16 Taxes | 16 | 467 | | |
| 17 Utilities | 17 | | | |
| 18 Depreciation expense or depletion | 18 | 3,186 | | |
| 19 Other | 19 | | | |
| 20 Total expenses | 20 | | | |
| 21 | 21 | | | |
| 22 | 22 | 3,264 | | |

456  Schedule E (Form 1040) 2014

---

Schedule E (Form 1040) 2014
Attachment Sequence No. 13  Page 2
Name(s) shown on return: KENNETH G MCKELL
Your social security number: 3034

**Part II** Income or Loss From Partnerships and S Corporations

27 Are you reporting any loss not allowed in a prior year due to the at-risk, excess farm loss, or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses?

28
| | (a) Name | | | |
|---|---|---|---|---|
| A MARINER INVESTORS, LLC | | | | |
| B | | | | |

61-1410154

| | (b) | (c) | (d) | (e) | (f) | (g) | (h) |
|---|---|---|---|---|---|---|---|
| A | | | | | | -79 | |

29a Totals
30 Add columns (g) and (j) of line 29a
31 Add columns (f), (h), and (i) of line 29b
32 Total partnership and S corporation income or (loss). ......... 32  -79

**Part III** Income or Loss From Estates and Trusts

**Part IV** Income or Loss From Real Estate Mortgage Investment Conduits (REMICs)—Residual Holder

**Part V** Summary

41 Total income or (loss). ......... 41  -3,572

DAA  Schedule E (Form 1040) 2014

Form **4797**

Sales of Business Property
(Also Involuntary Conversions and Recapture Amounts
Under Sections 179 and 280F(b)(2))
▶ Attach to your tax return.
▶ Information about Form 4797 and its separate instructions is at www.irs.gov/form4797.

OMB No. 1545-0184

**2014**

Attachment Sequence No. **27**

KENNETH C. MCNEIL

Identifying number
3034

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | 18 TAUBER AVENUE | 07/23/14 | | 15,000 | 4,072 | | 29,517 |

Form **4952**

Investment Interest Expense Deduction
▶ Information about Form 4952 and its instructions is at www.irs.gov/form4952.
▶ Attach to your tax return.

OMB No. 1545-0191

**2014**

Attachment Sequence No. **51**

KENNETH C. MCNEIL

Identifying number
3034

Part I — Total Investment Interest Expense

| | | | |
|---|---|---|---|
| 1 | Investment interest expense paid or accrued in 2014 | 1 | 24,438 |
| 2 | Disallowed investment interest expense from 2013 Form 4952, line 7 | 2 | |
| 3 | Total investment interest expense. Add lines 1 and 2 | 3 | 24,438 |

Part II — Net Investment Income

| | | | |
|---|---|---|---|
| 4a | Gross income from property held for investment | 4a | 200 |
| | | | |
| 5 | | 5 | 200 |
| 6 | Net investment income | 6 | 200 |

Part III — Investment Interest Expense Deduction

| | | | |
|---|---|---|---|
| 7 | Disallowed investment interest expense | 7 | 24,238 |
| 8 | Investment interest expense deduction | 8 | 200 |

Form **4952**

Department of the Treasury
Internal Revenue Service (99)

**Investment Interest Expense Deduction**

▶ Information about Form 4952 and its instructions is at www.irs.gov/form4952.
▶ Attach to your tax return.

OMB No. 1545-0191

**2014**

Attachment Sequence No. **51**

KENNETH G MCNEHI

Identifying number

3034

**Part I  Total Investment Interest Expense**

| | | |
|---|---|---|
| 1 | Investment interest expense paid or accrued in 2014 (see instructions) | 1 |
| 2 | Disallowed investment interest expense from 2013 Form 4952, line 7 | 2 |
| 3 | Total investment interest expense. Add lines 1 and 2 | 3 | 24,420 |

**Part II  Net Investment Income**

| | | |
|---|---|---|
| 4a | Gross income from property held for investment (excluding any net gain from the disposition of property held for investment) | 4a | 200 |
| b | Qualified dividends included on line 4a | 4b | |
| c | Subtract line 4b from line 4a | 4c | 200 |
| d | Net gain from the disposition of property held for investment | 4d | |
| e | Enter the smaller of line 4d or your net capital gain from the disposition of property held for investment (see instructions) | 4e | |
| f | Subtract line 4e from line 4d | 4f | |
| g | Enter the amount from lines 4b and 4e that you elect to include in investment income (see instructions) | 4g | |
| h | Investment income. Add lines 4c, 4f, and 4g | 4h | 200 |
| 5 | Investment expenses (see instructions) | 5 | |
| 6 | Net investment income. Subtract line 5 from line 4h. If zero or less, enter -0- | 6 | 200 |

**Part III  Investment Interest Expense Deduction**

| | | |
|---|---|---|
| 7 | Disallowed investment interest expense to be carried forward to 2015. Subtract line 6 from line 3. If zero or less, enter -0- | 7 | 24,220 |
| 8 | Investment interest expense deduction. Enter the smaller of line 3 or 6. See instructions | 8 | 200 |

For Paperwork Reduction Act Notice, see page 4.

Form **4952** (2014)

---

Form **8582**

Department of the Treasury
Internal Revenue Service (99)

**Passive Activity Loss Limitations**

▶ See separate instructions.
▶ Attach to Form 1040 or Form 1041.
▶ Information about Form 8582 and its instructions is available at www.irs.gov/form8582.

OMB No. 1545-1008

**2014**

Attachment Sequence No. **88**

KENNETH G MCNEHI

Identifying number

3034

**Part I  2014 Passive Activity Loss**

Caution: Complete Worksheets 1, 2, and 3 before completing Part I.

**Rental Real Estate Activities With Active Participation** (For the definition of active participation, see Special Allowance for Rental Real Estate Activities in the instructions.)

| | | |
|---|---|---|
| 1a | Activities with net income (enter the amount from Worksheet 1, column (a)) | 1a | 10,545 |
| b | Activities with net loss (enter the amount from Worksheet 1, column (b)) | 1b | 28,397 |
| c | Prior years unallowed losses (enter the amount from Worksheet 1, column (c)) | 1c | 42,710 |
| d | Combine lines 1a, 1b, and 1c | 1d | -60,562 |

**All Other Passive Activities**

| | | |
|---|---|---|
| 2a | Activities with net income (enter the amount from Worksheet 2, column (a)) | 2a | |
| b | Activities with net loss (enter the amount from Worksheet 2, column (b)) | 2b | |
| c | Prior years unallowed losses (enter the amount from Worksheet 2, column (c)) | 2c | |
| d | Combine lines 2a, 2b, and 2c | 2d | |
| 3 | Combine lines 1d and 2d. If this line is zero or more, stop here and include this form with your return; all losses are allowed, including any prior year unallowed losses entered on line 1c or 2c. Report the losses on the forms and schedules normally used | 3 | -60,562 |

If line 3 is a loss and:
• Line 1d is a loss, go to Part II.
• Line 2d is a loss (and line 1d is zero or more), skip Part II and go to Part III.
• Line 3 is a loss (and line 1d is zero or more), skip Parts II and III and go to line 15.

Caution: If your filing status is married filing separately and you lived with your spouse at any time during the year, do not complete Part II or Part III. Instead, go to line 15.

**Part II  Special Allowance for Rental Real Estate Activities With Active Participation**

Note: Enter all numbers in Part II as positive amounts. See instructions for an example.

| | | |
|---|---|---|
| 4 | Enter the smaller of the loss on line 1d or the loss on line 3 | 4 | 60,562 |
| 5 | Enter $150,000. If married filing separately, see instructions | 5 | |
| 6 | Enter modified adjusted gross income, but not less than zero (see instructions) | 6 | |
| 7 | Subtract line 6 from line 5. If zero or less, enter -0- | 7 | |
| 8 | Multiply line 7 by 50% (.5). Do not enter more than $25,000. If married filing separately, see instructions | 8 | |
| 9 | Enter the smaller of line 4 or line 8 | 9 | |

**Part III  Special Allowance for Commercial Revitalization Deductions From Rental Real Estate Activities**

| | | |
|---|---|---|
| 10 | Enter $25,000 reduced by the amount, if any, on line 10. If married filing separately, see instructions | 10 | |
| 11 | Enter the loss from line 4 | 11 | |
| 12 | Enter the amount, if any, from line 9 | 12 | |
| 13 | Subtract line 12 from line 11. If zero or less, enter -0- | 13 | |
| 14 | Enter the smaller of line 2c or line 13 | 14 | |

**Part IV  Total Losses Allowed**

| | | |
|---|---|---|
| 15 | Add the income, if any, on lines 1a and 2a and enter the total | 15 | 10,545 |
| 16 | Total losses allowed from all passive activities for 2014. Add lines 10, 14, and 15. See instructions to find out how to report the losses on your tax return | 16 | 10,545 |

For Paperwork Reduction Act Notice, see instructions.

Form **8582** (2014)

KENNETH G MCNEIL

Form 8582 (2014)    Page 2

Worksheet 1—For Form 8582, Lines 1a, 1b, and 1c (See instructions.)

| Name of activity | Current year | | Prior years | | Overall gain or loss | |
| --- | --- | --- | --- | --- | --- | --- |
| | (a) Net income (line 1a) | (b) Net loss (line 1b) | (c) Unallowed loss (line 1c) | | (d) Gain | (e) Loss |
| See Statement 21 | 10,545 | 29,397 | 42,710 | | | |
| Total | | | | | | |

Worksheet 2—For Form 8582, Lines 2a and 2b (See instructions.)

| Name of activity | (a) Current year deductions (line 2a) | (b) Prior year unallowed deductions (line 2b) | (c) Overall loss |
| --- | --- | --- | --- |
| | | | |
| Total | | | |

Worksheet 3—For Form 8582, Lines 3a, 3b, and 3c (See instructions.)

| Name of activity | Current year | | Prior years | | Overall gain or loss | |
| --- | --- | --- | --- | --- | --- | --- |
| | (a) Net income (line 3a) | (b) Net loss (line 3b) | (c) Unallowed loss (line 3c) | | (d) Gain | (e) Loss |
| | | | | | | |
| Total | | | | | | |

Worksheet 4—Use this Worksheet if an amount is shown on Form 8582, line 10 or 14 (See instructions.)

| Name of activity | Form or schedule and line number to be reported on (see instructions) | (a) Loss | (b) Ratio | (c) Special allowance | (d) Subtract column (c) from column (a) |
| --- | --- | --- | --- | --- | --- |
| | | | 1.00 | | |
| Total | | 69,298 | 1.00 | | 60,562 |

Worksheet 5—Allocation of Unallowed Losses (See instructions.)

| Name of activity | Form or schedule and line number to be reported on (see instructions) | (a) Loss | (b) Ratio | (c) Unallowed loss |
| --- | --- | --- | --- | --- |
| See Statement 22 | | | 1.00 | |
| Total | | | 1.00 | 60,562 |

Form 8582 (2014)

KENNETH G MCNEIL

Form 8582 (2014)    Page 3

Worksheet 6—Allowed Losses (See instructions.)

| Name of activity | Form or schedule and line number to be reported on (see instructions) | (a) Loss | (b) Unallowed loss | (c) Allowed loss |
| --- | --- | --- | --- | --- |
| See Statement 23 | | 71,107 | 60,562 | 10,545 |
| Total | | | | |

Worksheet 7—Activities With Losses Reported on Two or More Forms or Schedules (See instructions.)

| Name of activity | | (a) | (b) | (c) Ratio | (d) Unallowed loss | (e) Allowed loss |
| --- | --- | --- | --- | --- | --- | --- |
| Form or schedule and line number to be reported on (see instructions): | | | | | | |
| 1a Net loss plus prior year unallowed loss from form or schedule | | | | | | |
| b Net income from form or schedule | | | | | | |
| c Subtract line 1b from line 1a. If zero or less, enter -0- | | | | | | |
| Form or schedule and line number to be reported on (see instructions): | | | | | | |
| 1a Net loss plus prior year unallowed loss from form or schedule | | | | | | |
| b Net income from form or schedule | | | | | | |
| c Subtract line 1b from line 1a. If zero or less, enter -0- | | | | | | |
| Form or schedule and line number to be reported on (see instructions): | | | | | | |
| 1a Net loss plus prior year unallowed loss from form or schedule | | | | | | |
| b Net income from form or schedule | | | | | | |
| c Subtract line 1b from line 1a. If zero or less, enter -0- | | | | | | |
| Total | | | | 1.00 | | |

Form 8582 (2014)

29438ZTP  MCNEIL, KENNETH G
3034

# Federal Statements

## REAL ESTATE MANAGEMENT
### Statement 1 - Schedule C, Cost of Goods Sold, Line 39 - Other Costs

| Description | Amount |
| --- | --- |
| REPORTED ON SCHEDULE E AS RE | $ 11,762 |
| REPORTED ON SCHEDULE E AS RE | 2,860 |
| Total | $ 14,622 |

---

29438ZTP  MCNEIL, KENNETH G
3034

# Federal Statements

## 44 SOUTH HERMITAGE
### Statement 2 - Schedule E, Line 18 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | --- | --- | --- |
| Amortization | $ 166 | | $ 165 |
| Total | $ 166 | | $ 165 |

## 196 ROSEMONT AVE
### Statement 3 - Schedule E, Line 18 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | --- | --- | --- |
| LANDSCAPING | $ 150 | | $ 150 |
| LICENSES | 1,017 | | 1,017 |
| SEWER | 100 | | 100 |
| Total | $ 1,333 | | 1,333 |

## 219 WOODLAWN AVE
### Statement 4 - Schedule E, Line 18 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | --- | --- | --- |
| SEWER | $ 624 | | $ 624 |
| LICENSES | 77 | | 77 |
| Total | $ 701 | | 701 |

## 29438QTP  MCNEIL, KENNETH G
-3034

## Federal Statements

### 244 CLEVELAND AVE
#### Statement 5 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| LICENSES | $ 100 | | $ 100 |
| Total | $ 100 | | $ 100 |

### 52 SOUTH OLDEN
#### Statement 6 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| LICENSES | $ 100 | | $ 100 |
| SEWER | 114 | | 114 |
| Total | $ 214 | | $ 214 |

### 69 EDGEMERE AVENUE
#### Statement 7 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| LICENSES | $ 100 | | $ 100 |
| Total | $ 100 | | $ 100 |

5-7

## 29438QTP  MCNEIL, KENNETH G
-3034

## Federal Statements

### 78 RACE STREET
#### Statement 8 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| LICENSES | $ | | $ |
| PERMITS | | | |
| Sewer/Water | | | |
| Total | $ 0 | | $ 0 |

### 251 WOODLAWN AVE
#### Statement 9 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| SEWER | $ 1,684 | | $ 1,684 |
| Total | $ 1,684 | | $ 1,684 |

### 711 STUYVESANT
#### Statement 10 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| LICENSES | $ | | $ |
| SEWER | | | |
| MISC | | | |
| Total | $ 0 | | $ 0 |

8-10

29438ZTP  MCNEIL, KENNETH G
...3034

# Federal Statements

## 18 LAUREL AVENUE
### Statement 11 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | ---: | --- | ---: |
| Amortization | $ 90 | $ | $ 90 |
| LICENSES SEWER | 100 | | 100 |
| Total | $ 190 | $ | $ 190 |

## 18 PERRINE AVE
### Statement 12 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | ---: | --- | ---: |
| LICENSES | $ 0 | $ | $ 0 |
| Total | $ 0 | $ | $ 0 |

## 651 NORWAY AVE
### Statement 13 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | ---: | --- | ---: |
| SEWER | $ 624 | $ | $ 624 |
| Total | $ 624 | $ | $ 624 |

11-13

---

29438ZTP  MCNEIL, KENNETH G
...3034

# Federal Statements

## 29 S. OLDEN
### Statement 14 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | ---: | --- | ---: |
| LICENSES SEWER | $ 100 | $ | $ 100 |
| Total | $ 100 | $ | $ 100 |

## 48 S. OLDEN
### Statement 15 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | ---: | --- | ---: |
| LICENSES | $ 100 | $ | $ 100 |
| Total | $ 100 | $ | $ 100 |

## 324 MARY ST
### Statement 16 - Schedule E, Line 19 - Other Expenses

| Description | Gross Amount | Business Use Percentage | Net Amount |
| --- | ---: | --- | ---: |
| SEWER | $ 624 | $ | $ 624 |
| Total | $ 624 | $ | $ 624 |

14-16

29438ZTP  MCNEIL, KENNETH G  ████3034

## Federal Statements

### 329 CLEVELAND

**Statement 17 - Schedule E, Line 19 - Other Expenses**

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| LICENSES | $ 100 | | $ 100 |
| Total | $ 100 | | $ 100 |

### 343 GARFIELD

**Statement 18 - Schedule E, Line 19 - Other Expenses**

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| LICENSES | $ 100 | | $ 100 |
| Total | $ 100 | | $ 100 |

### 1420 GENESEE

**Statement 19 - Schedule E, Line 19 - Other Expenses**

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| SEWER | $ 624 | | $ 624 |
| Total | $ 624 | | $ 624 |

17-19

---

29438ZTP  MCNEIL, KENNETH G  ████3034

## Federal Statements

### 5 CORTELYOU

**Statement 20 - Schedule E, Line 19 - Other Expenses**

| Description | Gross Amount | Business Use Percentage | Net Amount |
|---|---|---|---|
| INSPECTION | $ 407 | | $ 407 |
| Total | $ 407 | | $ 407 |

20

2943E2TP  MCNEIL, KENNETH G
3034

## Federal Statements

**Statement 21 - Form 8582 Page 2 Worksheet 1 - For Form 8582, Lines 1a, 1b, and 1c**

| Description | Current Year Net Income | Current Year Net Loss | Prior Year Unallowed Loss | Overall Gain | Overall Loss |
|---|---|---|---|---|---|
| 59 EDGEMERE AVENUE | $ 965 | $ | $ 2,602 | $ | $ 1,637 |
| 78 RACE STREET | 45 | | 7,093 | | 7,048 |
| 251 WOODLAWN AVE | | 6,316 | 11,735 | | 18,051 |
| 711 STUYVESANT | | | | | |
| 18 LAUREL AVENUE | 799 | 10,545 | 5,423 | | 5,423 |
| 16 FERNING AVE | 1,097 | | | 1,097 | 9,746 |
| 631 NORMAV AVE | | 10,112 | 13,343 | | 23,455 |
| 29 S. OLDEN | | 100 | 1,257 | | 1,357 |
| 48 S. OLDEN | | 100 | 221 | | 321 |
| 324 MARY ST | | 624 | 522 | | 1,146 |
| 329 CLEVELAND | | 500 | 431 | | 931 |
| 343 GARFIELD | | 100 | 83 | | 183 |
| 1420 GENESEE | 4,375 | | | 4,375 | |
| CORTELYOU | 3,264 | | | 3,264 | |
| Total | $ 10,545 | $ 28,397 | $ 42,710 | $ 8,264 | $ 60,562 |

**Statement 22 - Form 8582 Worksheet 5 - For Form 8582, Allocation of Unallowed Losses**

| Description | Form/Sch | a) Loss | b) Ratio | c) Unallowed Loss |
|---|---|---|---|---|
| 59 EDGEMERE AVENUE | Sch E1 | $ 1,637 | 0.0236 | $ 1,431 |
| 78 RACE STREET | Sch E1 | 7,048 | 0.1017 | 6,159 |
| 251 WOODLAWN AVE | Sch E1 | 18,051 | 0.2605 | 15,779 |
| 711 STUYVESANT | Sch E1 | 5,423 | 0.0783 | 5,423 |
| 18 LAUREL AVENUE | Sch E1 | 9,746 | 0.1406 | 8,517 |
| 631 NORMAV AVE | Sch E1 | 23,455 | 0.3388 | 20,498 |
| 29 S. OLDEN | Sch E1 | 1,357 | 0.0196 | 1,186 |
| 48 S. OLDEN | Sch E1 | 321 | 0.0046 | 281 |
| 324 MARY ST | Sch E1 | 1,146 | 0.0166 | 1,002 |
| 329 CLEVELAND | Sch E1 | 931 | 0.0134 | 814 |
| 343 GARFIELD | Sch E1 | 183 | 0.0027 | 160 |
| Total | | $ 69,298 | 1.0000 | $ 60,562 |

21-22

2943E2TP  MCNEIL, KENNETH G
3034

## Federal Statements

**Statement 23 - Form 8582 Page 3 Worksheet 6 - Allowed Losses**

| Description | Form/Sch | a) Loss | b) Unallowed Loss | c) Allowed Loss |
|---|---|---|---|---|
| 59 EDGEMERE AVENUE | Sch E1 | $ 2,602 | $ 1,431 | $ 1,171 |
| 78 RACE STREET | Sch E1 | 7,093 | 6,159 | 934 |
| 251 WOODLAWN AVE | Sch E1 | 18,051 | 15,779 | 2,276 |
| 711 STUYVESANT | Sch E1 | 5,423 | 4,739 | 684 |
| 18 LAUREL AVENUE | Sch E1 | 8,517 | 2,078 | 2,957 |
| 631 NORMAV AVE | Sch E1 | 10,545 | 20,498 | 2,957 |
| 29 S. OLDEN | Sch E1 | 23,455 | 1,186 | 171 |
| 48 S. OLDEN | Sch E1 | 1,357 | 281 | 40 |
| 324 MARY ST | Sch E1 | 321 | 1,002 | 144 |
| 329 CLEVELAND | Sch E1 | 1,146 | 814 | 117 |
| 343 GARFIELD | Sch E1 | 931 | 160 | 23 |
| Total | | $ 21,107 | $ 60,562 | $ 10,545 |

23

B6G (Official Form 6G) (12/07)

IN RE McNeil, Kenneth G
_____
Debtor(s)

Case No. 3:15-bk-14218
_____
(If known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Joseph Bethea<br>38 Atterbury Avenue<br>Trenton, NJ  08618 | Residential lease |
| Jerel Miner<br>52 S. Olden Ave<br>Trenton, NJ  08609 | Residential tenant |
| Yolanda West<br>59 Edgemere Ave<br>Trenton, NJ  08618 | Residential tenant |
| Evelyn Green<br>219 Woodlawn Ave<br>Hamilton, NJ  08690 | Residential tenant |
| Miccheah Thompson<br>631 Norway Ave<br>Hamilton, NJ  08629 | Residential tenant |
| Vivian Mark Virginia<br>251 Woodlawn Ave<br>Hamilton, NJ  08609 | Residential tenant |
| Valerie Montgomery<br>244 Cleveland Ave<br>Trenton, NJ  08629 | Residential tenant |

© 1993-2013 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

United States Bankruptcy Court
District of New Jersey

In re:                                                              Case No. 15-14218-MBK
Kenneth G McNeil                                                    Chapter 11
         Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-3        User: admin          Page 1 of 2          Date Rcvd: Mar 31, 2017
                           Form ID: pdf903       Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Apr 02, 2017.
db             +Kenneth G McNeil,     52 S. Olden Avenue,    Trenton, NJ 08609-1524

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                          TOTAL: 0

         ***** BYPASSED RECIPIENTS *****
NONE.                                                                          TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 02, 2017                        Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on March 31, 2017 at the address(es) listed below:
              Andrew L. Spivack   on behalf of Creditor   BANK OF AMERICA, N.A. AS SERVICER FOR DEUTSCHE BANK
               NATIONAL TRUST COMPANY, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT RELATING TO IMPAC
               SECURED ASSETS et.al. nj.bkecf@fedphe.com
              Brian E Caine   on behalf of Creditor   Wilmington Savings Fund Society, et al
               bcaine@parkermccay.com,   BKcourtnotices@parkermccay.com
              Denise E. Carlon   on behalf of Creditor   U.S. Bank, National Association, not in its individual
               capacity but solely as Trustee for the RMAC Trust Series 2016-CTT dcarlon@kmllawgroup.com,
               bkgroup@kmllawgroup.com
              Denise E. Carlon   on behalf of Creditor   Nationstar Mortgage LLC dcarlon@kmllawgroup.com,
               bkgroup@kmllawgroup.com
              Denise E. Carlon   on behalf of Creditor   U.S. Bank National Associatio, Et Al...
               dcarlon@kmllawgroup.com,   bkgroup@kmllawgroup.com
              Denise E. Carlon   on behalf of Creditor   BANK OF AMERICA, N.A. AS SERVICER FOR DEUTSCHE BANK
               NATIONAL TRUST COMPANY, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT RELATING TO IMPAC
               SECURED ASSETS et.al. dcarlon@kmllawgroup.com,   bkgroup@kmllawgroup.com
              Elizabeth L. Wassall   on behalf of Creditor   WestVue NPL Trust II vbarber@udren.com,
               ewassall@udren.com
              Gavin N. Stewart   on behalf of Creditor   Specialized Loan Servicing, LLC, as servicing agent
               for U.S. Bank National Association, as Trustee, for JPMorgan Mortgage Trust 2007-S2 Mortgage
               Pass-through Certificates BKNJ@buckleymadole.com
              Jeffrey M. Sponder   on behalf of U.S. Trustee   United States Trustee
               jeffrey.m.sponder@usdoj.gov,   jeffrey.m.sponder@usdoj.gov
              Jeffrey M. Sponder   on behalf of U.S. Trustee   U.S. Trustee. jeffrey.m.sponder@usdoj.gov,
               jeffrey.m.sponder@usdoj.gov
              Jennifer R. Gorchow   on behalf of Creditor   OCWEN LOAN SERVICING, LLC, AS SERVICER FOR DEUTSCHE
               BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIZATION TRUST SERIES
               2005-A15 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-O nj.bkecf@fedphe.com
              Jerome B. Blank   on behalf of Creditor   BANK OF AMERICA, N.A. AS SERVICER FOR DEUTSCHE BANK
               NATIONAL TRUST COMPANY, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT RELATING TO IMPAC
               SECURED ASSETS et.al. nj.bkecf@fedphe.com
              Jerome B. Blank   on behalf of Creditor   OCWEN LOAN SERVICING, LLC, AS SERVICER FOR DEUTSCHE
               BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIZATION TRUST SERIES 2006-A4
               MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-D nj.bkecf@fedphe.com
              John D. Krohn   on behalf of Creditor   OCWEN LOAN SERVICING, LLC nj.bkecf@fedphe.com
              John D. Krohn   on behalf of Creditor   DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER
               THE POOLING AND SERVICING AGREEMENT RELATING TO IMPAC SECURED ASSETS CORP., MORTGAGE
               PASS-THROUGH CERTIFICATES, SERIES 2006-5 nj.bkecf@fedphe.com
              John Philip Schneider   on behalf of Creditor   WELLS FARGO BANK, N.A. D/B/A AMERICAS SERVICING
               COMPANY nj.bkecf@fedphe.com
              John Philip Schneider   on behalf of Creditor   WELLS FARGO BANK, N.A. nj.bkecf@fedphe.com
              John Philip Schneider   on behalf of Creditor   OCWEN LOAN SERVICING, LLC nj.bkecf@fedphe.com

District/off: 0312-3          User: admin              Page 2 of 2              Date Rcvd: Mar 31, 2017
                             Form ID: pdf903           Total Noticed: 1

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
          John Philip Schneider   on behalf of Creditor    OCWEN LOAN SERVICING, LLC, AS SERVICER FOR
           DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIZATION TRUST
           SERIES 2006-A4 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-D nj.bkecf@fedphe.com
          John Philip Schneider   on behalf of Creditor    BANK OF AMERICA, N.A. AS SERVICER FOR DEUTSCHE
           BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT RELATING TO
           IMPAC SECURED ASSETS et.al. nj.bkecf@fedphe.com
          John Philip Schneider   on behalf of Creditor    JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
           servicer for U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Trust 2007-S2
           nj.bkecf@fedphe.com
          Joseph Garibyan   on behalf of Creditor    U.S. BANK NATIONAL ASSOCIATION joegaribyan@gmail.com
          Joshua I. Goldman   on behalf of Creditor    Nationstar Mortgage LLC jgoldman@kmllawgroup.com,
           bkgroup@kmllawgroup.com
          Joshua I. Goldman   on behalf of Creditor    U.S. Bank National Associatio, Et Al...
           jgoldman@kmllawgroup.com,  bkgroup@kmllawgroup.com
          Melissa N. Licker   on behalf of Creditor    Specialized Loan Servicing, LLC, as servicing agent
           for U.S. Bank National Association, as Trustee, for JPMorgan Mortgage Trust 2007-S2 Mortgage
           Pass-through Certificates NJ_ECF_Notices@buckleymadole.com
          Melissa N. Licker   on behalf of Creditor    Nationstar Mortgage LLC
           NJ_ECF_Notices@buckleymadole.com
          Michael Frederick Dingerdissen   on behalf of Creditor    OCWEN LOAN SERVICING, LLC
           nj.bkecf@fedphe.com
          Michael Frederick Dingerdissen   on behalf of Creditor    WELLS FARGO BANK, N.A.
           nj.bkecf@fedphe.com
          Nicholas V. Rogers   on behalf of Creditor    DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, ON
           BEHALF OF THE HOLDERS OF THE IMPAC SECURED ASSETS CORP., MORTGAGE et.al. nj.bkecf@fedphe.com
          Patrick O. Lacsina   on behalf of Creditor    Seterus, Inc. as authorized Subservicer for Federal
           National Mortgage Association (Fannie Mae), Creditor c/o Seterus, Inc. gshasa@rasnj.com,
           bmusarra@rasnj.com,bkyecf@rasflaw.com,legerman@rasnj.com
          Patrick O. Lacsina   on behalf of Creditor    Seterus, Inc. as the authorized subservicer for
           Federal National Mortgage Assocation ("Fannie Mae"), creditor c/o Seterus, Inc. gshasa@rasnj.com,
           bmusarra@rasnj.com,bkyecf@rasflaw.com,legerman@rasnj.com
          Robert P. Saltzman   on behalf of Creditor    Nationstar Mortgage LLC dnj@pbslaw.org
          Robert P. Saltzman   on behalf of Creditor    Seterus, Inc. as the authorized subservicer for
           Federal National Mortgage Assocation ("Fannie Mae"), creditor c/o Seterus, Inc. dnj@pbslaw.org
          Robert P. Saltzman   on behalf of Creditor    Wilmington Savings Fund Society, et al dnj@pbslaw.org
          Robert P. Saltzman   on behalf of Creditor    Rushmore Loan Management Services, servicer for
           Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee
           for Carlsbad Funding Mortgage Trust dnj@pbslaw.org
          Scott E. Kaplan   on behalf of Debtor Kenneth G McNeil scott@sekaplanlaw.com,
           felisha@sekaplanlaw.com,sekparalegal@gmail.com
          Steven Eisenberg   on behalf of Creditor    Ocwen Loan Servcing, LLC, as servicer for Deutsche
           Bank National Trust Company, as Trustee for American Home Mortgage Asset Trust 2007-3,
           Mortgage-Backed Pass-Through Certificates Series 2007-3 bkecf@sterneisenberg.com,
           jmcnally@sterneisenberg.com;skelly@sterneisenberg.com;bkecf@sterneisenberg.com
          Steven K. Eisenberg   on behalf of Creditor    DEUTSCHE BANK NATIONAL TRUST COMPANY
           bkecf@sterneisenberg.com,
           jmcnally@sterneisenberg.com;skelly@sterneisenberg.com;bkecf@sterneisenberg.com
          U.S. Trustee.    USTPRegion03.NE.ECF@usdoj.gov
          United States Trustee    USTPRegion03.NE.ECF@usdoj.gov
          Warren S. Jones, Jr.   on behalf of Creditor    U.S. BANK NATIONAL ASSOCIATION
           wsjonesesq@verizon.net,  bestcasewsj@gmail.com
                                                                                          TOTAL: 41